## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| CLEAR CHANNEL BROADCASTING, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 08 cv 2884 |
| | ) | |
| THE TRIBUNE COMPANY, LOCAL TV LLC, | ) | Judge Joan B. Gottschall |
| and ANDREW FRIEDMAN, | ) | Magistrate Judge Susan E. Cox |
| Defendants. | ) | |
| | ) | |

## THE TRIBUNE COMPANY'S AND LOCAL TV LLC'S MEMORANDUM
## IN OPPOSITION TO CLEAR CHANNEL BROADCASTING, INC.'S MOTION
## FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

David J. Bradford
Terri L. Mascherin
John F. Ward, Jr.
Jason J. Green
JENNER & BLOCK LLP
330 N. Wabash, Suite 4000
Chicago, IL 60611
(312) 222-9350

## INTRODUCTION

Defendants The Tribune Company ("Tribune") and Local TV LLC ("Local TV") by their attorneys, Jenner & Block LLP, respectfully submit this Memorandum in Opposition to Clear Channel Broadcasting, Inc.'s ("Clear Channel") Motion for a Temporary Restraining Order and Preliminary Injunction. Clear Channel seeks to enjoin Tribune and Local TV from "employing, engaging or retaining [Defendant] Friedman . . . with respect to the creation, programming, and/or distribution of news, entertainment, or informational content for delivery via 'internet protocol (IP). . . ." (Mot. at 5.) The motion should be denied.

## FACTS AND BACKGROUND

On April 30, 2008, Mr. Friedman voluntarily terminated his employment with Clear Channel for "good cause" pursuant to Section 8(d) of his employment agreement (the "Agreement"). (Friedman Aff. ¶ 2.) Mr. Friedman left Clear Channel because (1) the Company substantially reduced his responsibilities and authority, including all managerial functions and (2) Clear Channel had changed its business model to deemphasize news content (where Mr. Friedman was focused) to greater relative emphasis on music and related content. (*Id.*) Clear Channel accepted Mr. Friedman's resignation on May 9, 2008. (*Id.* ¶ 3.) At the same time, Clear Channel offered Mr. Friedman a severance package (payment of salary through December 31, 2008) in exchange for his agreement to release all claims against Clear Channel and to extend the non-compete terms of the Agreement through the end of the severance payment period (instead of the otherwise applicable 60-day non-compete period). (*Id.* ¶ 3.) Mr. Friedman rejected Clear Channel's offer in writing. (*Id.* ¶ 4.)

Prior to leaving Clear Channel, Mr. Friedman contacted Tribune and Local TV about prospective job opportunities. (Gilbert Decl. ¶ 4.) Defendants had not sought out Mr. Friedman. (Gilbert Decl. ¶ 4.) In the course of those communications, neither Tribune nor Local TV sought

1

to obtain from Mr. Friedman any business information about Clear Channel, confidential or otherwise.  (Gilbert Decl. ¶¶ 5-6; Taylor Decl. ¶ 6.)[1]  Likewise, Tribune and Local TV are not aware of any confidential or other business information belonging to Clear Channel in Mr. Friedman's possession and do not believe that Friedman is using, or has used, any such information in his new employment capacity at Local TV.  (Gilbert Decl. ¶ 7; Taylor Decl. ¶ 4.)  Mr. Friedman has stated in his declaration that he "has not taken" and is "not in possession of any confidential information of Clear Channel" and that he has "not disclosed any confidential information of Clear Channel to Local TV, the Tribune or any third party." (Friedman Aff. ¶¶ 8, 10.)  Further, neither Tribune nor Local TV has any interest in learning about or obtaining confidential or trade secret information regarding Clear Channel's on-line or internet strategy, business plans, or the like (to extent such information exists in the first place).  (Gilbert Decl. ¶ 6; Taylor Decl. ¶ 6.)

Clear Channel is not a competitor of either Tribune or Local TV.   (Gilbert Decl. ¶ 8; Taylor Decl. ¶ 5.)   Clear Channel has two primary business lines:  radio stations and outdoor advertising.  (Gilbert Decl. ¶ 8.)  In contrast, Tribune's primary businesses are newspapers and television broadcast stations.  (Its one radio station is a news-based station located in Chicago; Clear Channel has no such news-focused station in Chicago.)  (*Id*.)  Likewise, Local TV is a business exclusively focused on the ownership of local television stations.  (Taylor Decl. ¶ 5.)

Mr. Friedman's employment role at Local TV is dissimilar to his role at Clear Channel. (Friedman Aff. ¶ 7.)  In his present position, Mr. Friedman is responsible for identifying and organizing the news content generated by the Tribune's television stations and newspapers and Local TV's television stations.  (Gilbert Decl. ¶ 9.)  Further, Mr. Friedman is tasked with

---

[1]  The Declaration of Pam Taylor ("Taylor Decl.") is not being filed contemporaneously with this Memorandum.  Ms. Taylor has approved the content of the Taylor Decl. but is currently traveling and thus has been unable to submit signed copy.  The signed Taylor Decl. will be filed as soon as possible.

developing tools and platforms that will allow for the most efficient, internal sharing of that news content, in electronic form, by and among Tribune's newspapers and television stations and Local TV's stations. (*Id.*; Friedman Aff. ¶ 7)  In contrast, since having his duties substantially reduced in June 2007, Mr. Friedman's role at Clear Channel was limited to traveling to Clear Channel's various radio stations across the country to consult with those businesses about their local web site operations.  (Friedman Aff. ¶¶ 2, 7.)

## ARGUMENT

A temporary restraining order ("TRO") is a drastic remedy, reserved for only the most exceptional and emergency circumstances. *Illusions Too Reality, LLC v. City of Harvey*, No. 02 C 7272, 2003 WL 260335, at *4 (N.D. Ill. Feb. 4, 2003).  A TRO turns on the following factors: (1) the petitioner's likelihood of success on the merits; (2) irreparable injury absent a TRO; (3) the unavailability of an adequate remedy at law; (4) the balance of harms; and (5) the public interest. *Id.* at *4.  Under those authorities, Clear Channel's motion should be denied.

**I.    Clear Channel Has Not Demonstrated a Likelihood of Success On The Merits.**

**A.    Clear Channel Has Not Demonstrated a Likelihood of Success on Its Breach of Contract Claims against Friedman.**

Clear Channel first argues a reasonable likelihood of success on its breach of contract claim against Friedman.   Specifically, Clear Channel argues that Friedman breached his Employment Agreement (the "Agreement") by violating a non-compete provision (the "Non-Compete").  The Non-Compete provides:

> during the Employee's employment with the Company and for a period of sixty (60) days after employment ends, the Employee will not directly or indirectly, be employed or retained by, own, manage, control, or be connected with, in any capacity whatsoever, whether as an officer, director, shareholder, partner, associate, employee, owner, consultant, provider of professional services or otherwise to any business that distributes audio, video and/or data content, whether such distribution is in the form of analog, digital, cellular, broadband, streaming, "high definition" or otherwise, and whether such distribution is received via radio, television, cable, internet, satellite, wireless or otherwise

3

which is receivable in any counties located in any Designated Market Area (the "DMA") in which Employee has responsibilities and duties under this Agreement or within a 50-mile radius of such DMA as defined by Arbitron.

(Agreement § 7(a).)

By its terms, the Agreement is governed by Texas law. (Agreement § 12.) However, the Agreement further provides that "to the extent the [Non-Compete] is prohibited by the law of the state in which [Friedman] [was] employed, the [Non-Compete] shall be deemed stricken." Friedman was employed in Illinois throughout his term of employment with Clear Channel. (Friedman Aff. ¶ 2.)[2] Accordingly, to demonstrate a substantial likelihood of success on its claim for breach of contract, Clear Channel must demonstrate that the Non-Compete provision is enforceable under both Texas and Illinois law. Clear Channel has failed to meet that burden.

### 1. The Illinois Broadcast Industry Free Market Act Renders Friedman's Non-Compete Unenforceable as a Matter of Law.

Section 10 of the Broadcast Industry Free Market Act, entitled "Post-employment covenants not to compete are prohibited," provides that:

(a) No broadcasting industry employer may require in an employment contract that an employee or prospective employee refrain from obtaining employment in a specific geographic area for a specific period of time after termination of employment with that broadcasting industry employer.

(b) This Section does not prevent the enforcement of a covenant not to compete during the term of an employment contract or against an employee who breaches an employment contract.

820 ILCS 17/10. Under the Act, "broadcasting industry" means "television, radio, and cable stations." "Broadcast Employee" means "any employee of a broadcasting industry employer, other than a sales or management employee." 820 ILCS 17/5.

---

[2] Clear Channel concedes that Illinois was the location of Friedman's employment; it recently filed a Notice of Arbitration that seeks to conduct arbitration in Chicago. Under Section 16 of the Agreement, "arbitration shall be conducted in the market in which [Friedman] work[ed]." (Agreement § 16.)

Here, Friedman's Non-Compete is unenforceable under the Illinois Broadcast Industry Free Market Act. Clear Channel is a "broadcast industry employer" because it is "engaged in the business of creating and distributing content for various types of media, including radio." (Compl. ¶ 3.) As an employee of Clear Channel, Friedman was a "broadcast employee" who was neither a sales nor management employee. (Friedman Aff. ¶ 2.) And, contrary to the express prohibition in the Act, the Non-Compete purports to prohibit Friedman from obtaining employment in a specific geographic area (within 50 miles of a "Designated Market Area") for a specific period of time (60 days) after termination of employment. Accordingly, the Non-Compete is unenforceable as a matter of law.

> **2. The Non-Compete Is Unenforceable Under Both Illinois and Texas Law Because It Is Unrelated To Any Reasonably Protectable Interest.**

Under Illinois law, the question whether a restrictive covenant is enforceable is a question of law. *Liautaud v. Liautaud* 21 F.3d 981, 986 (7th Cir. 2000). "Because Illinois courts abhor restraints on trade, restrictive covenants are carefully scrutinized." *Id.*; *Francorp. Inc. v. Siebert*, 126 F. Supp. 2d 543, 545 (N.D. Ill. 2000). "Restrictive covenants between employers and employees are particularly disfavored." *Francorp*, 126 F. Supp. 2d at 545.

An employer seeking to enforce a restrictive covenant must establish that the terms of the restraint are (1) reasonable in duration, geographic area, and scope of prohibited activity, and (2) necessary to protect a legitimate business interest of the employer. *Lawrence & Allen. Inc. v. Cambridge Human Res. Group, Inc.*, 292 Ill. App. 3d 131, 138, (2d Dist. 1997). The requirement "that a restrictive covenant be reasonable is distinct from, and in addition to, the requirement that there first be a protectable interest." *Eichmann v. Nat'l Hosp. and Health Care Servs.*, 308 Ill. App. 3d 337, 343-44 (1st Dist. 1999). A covenant not to compete must be reasonably related to the employer's protectable interest. *Id.* at 345; *Lawrence & Allen*, 292 Ill.

App. 3d at 138.  Thus, courts routinely have held unenforceable restrictive covenants with overly broad or undefined prohibited activities.  *George S. May Int'l Co. v. Int'l Profit Assoc.*, 256 Ill. App. 3d 779 (1st Dist. 1993); *Arpac Corp. v. Murray*, 226 Ill. App. 3d 65 (1st Dist 1992).

As in Illinois, a covenant not to compete under Texas law is similarly enforceable only to the extent it contains reasonable limitations as to the time, the geographic area, and the scope of activity restrained and is not broader than necessary to protect the business interest of the employer.  Tex. Bus. & Com. Code § 15.50 (a) (2008); *see also A. Sheshunoff Mgmt. Srvs., L.P. v. Johnson*, 209 S.W.3d 644, 648 (Tx. 2006).  Texas law provides that a former employee is entitled to freely use general knowledge, skills and experience acquired during his employment to compete with his former employer.  *Hunke v. Wilcox*, 815 S.W.2d 855, 858 (Tx. App. 1991).

Here, the Non-Compete provision is unenforceable under both Illinois and Texas law because it is unrelated to any protectable interest Clear Channel may have had in preventing Mr. Friedman from working for certain competitors.  That is because, as discussed in Section I.B.1 below, Clear Channel has not demonstrated a protectable interest in any of the alleged "Confidential Information" (*see* Compl. ¶ 14) and thus the Non-Compete is not reasonably related to that.[3]

Moreover, even if certain of Clear Channel's so-called "Confidential Information" constitutes a protectable interest, the Non-Compete is unenforceable because rather than expressly limiting the employers from whom Mr. Friedman could seek employment, the Non-Compete purports to preclude him from working for any employer that distributes "data content," *i.e.* any employer with a web site.  That restriction is plainly unreasonable as applied to

---

[3] In its Motion, Clear Channel asserts that the Non-Compete is effective up to and including December 31, 2008.  That argument simply ignores the express language of that provision, which provides that the Non-Compete is effective only for a period of sixty (60) days after employment ends.  (Agreement § 7(a).)

Mr. Friedman, whose work has long involved electronic and on-line content, as well as his potential employment with Tribune and Local TV, neither of which competes with Clear Channel in any meaningful sense.

### 3. The Court Should Decline To Reform The Non-Compete.

Implicitly recognizing that the Non-Compete unreasonably prohibits extensive post-employment activity, Clear Channel seeks reformation "to the extent necessary to cause the limitations contained in the covenant as to . . . scope of activity to be restrained and to impose a restraint that is not greater that necessary." (Mem. at 7.)  This Court should decline that request because reforming the Non-Compete is not necessary to protect Clear Channel's confidentiality interests.  That is because, as noted above, Clear Channel does not compete with Tribune or Local TV any more than it competes with any other business with a web site.  Accordingly, reforming the Agreement to apply no more broadly than precluding Mr. Friedman from, for example, working for Tribune or Local TV is not necessary to protect any reasonable confidentiality interest of Clear Channel.[4]

### B. Clear Channel Has Not Demonstrated a Substantial Likelihood of Success on its Trade Secrets Claim.

Clear Channel also has failed to demonstrate a substantial likelihood of success on its misappropriation of trade secrets claim.  "A party seeking an injunction [under the Illinois Trade Secrets Act ("ITSA")] must . . . prove both the existence of a trade secret and the misappropriation" of that trade secret.  *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1268 (7th Cir. 1995).  Clear Channel has not -- and cannot -- meet its burden on either prong of the analysis.

---

[4]  Even if the Non-Compete were somehow enforceable (which it is not), Clear Channel could not demonstrate a likelihood of success on its claim for breach of contract because Clear Channel is not a competitor of either Tribune or Local TV. (Gilbert Decl. ¶ 8; Taylor Decl. ¶ 5.)

1.    **Clear Channel Has Not Demonstrated The Existence of a Trade Secret.**

The ITSA defines a "trade secret" as information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that: (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality. *Stenstrom Petro. Servs. Group, Inc. v. Mesch*, 375 Ill. App. 3d 1077, 1093 (2d Dist. 2007); 765 ILCS 1065/2(d).

Information has value if it gives rise to actual or potential commercial advantage for the owner of the information. *Mangren Research & Dev. Corp. v. Nat'l Chem. Co.*, 87 F.3d 937, 942 (7th Cir. 1996). Further, if the information is known or understood within an industry, even if it is unknown to the public at large, it is not sufficiently secret to allow the owner of the information to derive requisite economic value from the information. *Pope v. Alberto-Culver Co.*, 296 Ill. App. 3d 512, 515 (1st Dist. 1998); *see also Computer Care v. Serv. Sys. Enters., Inc.*, 982 F.2d 1063, 1072 (7th Cir. 1992). Information is "sufficiently secret" where it "is not 'readily ascertainable' from a public source but, rather, is developed over time with a substantial amount of effort and expense . . . ." *RKI, Inc. v. Grimes*, 177 F. Supp. 2d 859, 873 (N.D. Ill. 2001); *Delta Med. Sys. v. Mid-America Med. Sys., Inc.*, 331 Ill. App.3d 777, 791 (1st Dist. 2002).

Likewise, an employee's basic training and skills to perform a particular job cannot be considered a "trade secret." "It is clear that an employee may take with him, at the termination of his employment, general skills and knowledge acquired during his tenure with the former employer." *Schulenburg v. Signatrol, Inc.*, 33 Ill.2d 379, 387 (1965). To hold otherwise would "force a departing employee to perform a prefrontal lobotomy on himself or herself [and] disserve the free market goal of maximizing available resources to foster competition." *Fleming Sales Co., Inc. v. Bailey*, 611 F. Supp. 507, 514 (N.D. Ill. 1985). Thus, "the right of an

individual to follow and pursue a particular occupation for which he is best trained is a most fundamental right . . . one who has worked in a particular field cannot be compelled to erase from his mind all of the general skills, knowledge and expertise acquired through this experience." *ILG Indus., Inc. v. Scott*, 49 Ill. 2d 88, 93-94 (1971).

To demonstrate the existence of a trade secret, "[i]t is not enough to point to broad areas of technology and assert that something there must have been secret and misappropriated. The Plaintiff must show *concrete secrets*." *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1266 (7th Cir. 1992) (emphasis added); *qad. Inc. v. ALN Assocs., Inc.*, No. 88 C 2246, 1990 WL 93362, at *3 (N.D. Ill. June 20, 1990) ("blunderbuss statement that 'Everything you got from us was a trade secret'" is insufficient); *AMP Inc. v. Fleishhacker*, 823 F.2d 1199, 1202-03 (7th Cir. 1987). In *AMP*, for example, the court held that the plaintiff-employer's assertion that a multi-paged list of general items and categories of internal information constituted trade secrets failed to adequately identify the requisite particularized items of information necessary to identify a trade secret. 823 F.2d at 1202-03. Similarly, in *Composite Marine*, the court found plaintiff's eight categories of alleged trade secrets "exceedingly general," and concluded that there was insufficient evidence that any trade secrets had been misappropriated. 962 F.2d at 1266, 1268.

Here, Clear Channel does not allege a single item of information that could qualify as a trade secret under the ITSA. Rather, it adopts a kitchen-sink style litigation position by arguing that virtually every piece of information that it alleges Friedman learned during his tenure at Clear Channel constitutes a trade secret. (*See* Compl. ¶ 14.) That is not sufficient to demonstrate a trade secret under the ITSA or federal pleading requirements. Clear Channel fails to identify a single specific report, contract, formula, process, business plan or other document or item of information to which Mr. Friedman had access that was secret and of economic value to Clear

Channel. Its broad claim that all financial information, programs, plans, contracts, prices, and other categories or information are trade secrets and that Mr. Friedman has access to all aspects of those broad categories of information is insufficient to meet Clear Channel's burden. *See Composite Marine*, 962 F.2d at 1266; *Nilssen v. Motorola, Inc.*, 963 F.Supp. 664, 672 (N.D. Ill. 1997); *AMP Inc.*, 823 F.2d at 1202-03; *ALN Assocs., Inc.*, 1990 WL 93362, at *3.

Moreover, even if some item of information that falls within one of those broad categories somehow were "confidential," Clear Channel also fails to explain *why* maintaining the confidence of any of those broad categories of information puts it at a competitive advantage. The closest it comes is merely to offer the bald conclusion that the "value of this type of information to a competitor is obvious" and that the "real value in possessing the opposing team's playbook is not to copy it, but to learn what counter-strategies would be most effective." (Mem. at 8.) That is insufficient to meet Clear Channel's burden to demonstrate tangible economic benefit derived from maintaining the confidentiality of any of that information. *See Composite Marine*, 962 F.2d at 1265-66; 765 ILCS 1065/2 (d)(1).

### 2. Even If Clear Channel Had Demonstrated The Existence Of A Trade Secret, It Has Not Demonstrated Any Threatened Or Inevitable Misappropriation.

To state a claim under ITSA, the plaintiff must also establish the actual or threatened use of the trade secret in the defendant's business. *See Composite Marine*, 962 F.2d at 1265-66. Clear Channel, however, cannot demonstrate actual or threaten use because Friedman does not possess any Clear Channel trade secrets (Friedman Aff. ¶ 10), and neither Tribune nor Local TV has received or wishes to make use of any such trade secrets (Taylor Decl. ¶ 6; Gilbert Decl. ¶¶ 5-7).[5]

---

[5] Even if Friedman had trade secrets, the mere fact that a former employee goes to work for another company in the same field and could possibly misuse the plaintiff's trade secrets is not enough to show threatened use under the ITSA. *Teradyne, Inc. v. Clear Commc'ns. Corp.*, 707 F.Supp. 353, 356-57 (N.D. Ill. 1989). In *Teradyne*, for example, this court denied injunctive relief, stating that "there is no

Clear Channel has made no claim, nor could it, that Friedman has made any express threats to use any trade secrets Clear Channel might possess. While Clear Channel alleges that Friedman downloaded contacts and emailed other information from his Clear Channel computer, it fails to explain how any of that information constitutes a trade secret, suggesting only that his contacts were undoubtedly "important." (Compl. ¶ 25-26.) Mr. Friedman testifies that he has not taken, and is not in the possession of, any confidential information of Clear Channel. (Friedman Aff. ¶ 10.) The evidence also demonstrates that Friedman has not disclosed any confidential information to Local TV, Tribune or any third party (Friedman Aff. ¶ 10), and that neither Tribune nor Local TV has asked for it, intends to ask for it, or even has any desire to have such information (Taylor Decl. ¶ 6; Gilbert Decl. ¶¶ 5-7).

Plaintiff also fails to demonstrate that Friedman would inevitably disclose any of the supposed trade secrets in his new job with Local TV. Under the "inevitable disclosure doctrine," a plaintiff may prove a claim of trade secret misappropriation by demonstrating that the former employee's new employment will inevitably lead him or her to rely on the plaintiff's trade secrets. *Strata Mktg, Inc. v. Murphy*, 317 Ill.App.3d 1054 (1st Dist. 2000); *Pepsico v. Redmond*, 54 F.3d 1262, 1270 (7th Cir. 1995). Essentially, the theory is that by simply performing duties for a new employer, the employee cannot help but utilize or disclose knowledge of trade secrets gained as a result of that employee's performance of duties for the former employer. *Pepsico*, 54 F.3d at 1269; *Strata Mktg,* 317 Ill. App. 3d at 1054. Thus, "when an employee is placed in a position where he is called upon to solve problems similar to or the same as those solved for his past employer, the employee, consciously or unconsciously, will inevitably draw upon the

---

allegation that defendants have in fact threatened to use Teradyne's secrets or that they will inevitably do so. An allegation that the defendants said they would use secrets or disavowed their confidentiality agreements would serve this purpose." *Id.* at 356-57. Thus, in the absence of actual use, the court required plaintiffs to show either an express threat of use, or circumstances that would make use inevitable.

knowledge, including trade secret information, obtained while working for his past employer." *C & F Packing Co. v. IBP, Inc.*, No. 93-C-1601, 1998 WL 1147139, at *25 (N.D. Ill. Mar. 16, 1998).

The inevitable disclosure doctrine, however, "treads an exceedingly narrow path through judicially disfavored territory . . . [and] should be applied in only the rarest of cases." *EarthWeb, Inc. v. Schlack*, 71 F. Supp. 2d 299, 310 (S.D.N.Y. 1999). That makes sense because the term "inevitable" means just that; the threat must be unavoidable or certain to occur. A mere suspicion or possibility of disclosure will not constitute an actionable threat. *See Dulisse v. Park Int'l Corp.*, No. 97 C 8018, 1998 WL 25158, at *3-4 (N.D. Ill. Jan. 7, 1998).

To that end, courts in this district repeatedly have rejected claims under the inevitable disclosure doctrine where the employee's new job did not place him or her in a position where he or she would be called upon to solve problems similar to, or the same as, those solved for the former employer. Thus, it cannot be said that the employee would inevitably draw upon trade secrets obtained while working for the former employer. *See, e.g.*, *Zellweger Analytics, Inc. v. Milgram*, No. 95-C-5998, 1997 WL 667778 at *3 (N.D. Ill. Oct. 21, 1997) (former employee would not inevitably disclose defendant's trade secrets because new employer "already ha[d] an independently derived, functioning" product and defendant presented no evidence that trade secrets would be utilized); *Abbott Labs. v. Chiron Corp.*, No. 97-C-0519, 1997 WL 208369, at *3 (N.D. Ill. Apr. 23, 1997) ("[e]ven when the position assumed by a former employee with a competitor is similar to his or her previous position, [inevitable] disclosure of trade secret information is not inevitable").

That is the case here. As discussed in Section I.B.1 above, Mr. Friedman simply does not possess any information that constitutes a trade secret. Accordingly, even if Mr. Freidman

wanted to disclose a Clear Channel trade secret -- which he does not -- he could not do so. Moreover, even if he possessed trade secrets (which he does not), Mr. Friedman is not going to be in a position to disclose them inevitably because does not perform the same job duties or responsibilities as he did with Clear Channel.   After June 2007, Friedman was employed by Clear as VP, Marketing-News, Talk & Sports and his work was limited to advising and consulting with local non-music radio stations, with no obligations or responsibilities regarding online content at either a national or local level.   (Friedman Aff. ¶ 7.)   In his new capacity as Vice President of Interactive Content with Local TV, he is responsible for setting up a mechanism to enhance the efficient, internal on-line access, by and among the Tribune television stations and newspapers and the Local TV stations, of the news, sports, entertainment and feature content generated by those same television stations and newspapers.   (*Id.*)[6]

Moreover, although trade secret law serves to protect and encourage innovation, courts are disinclined to chill the employment market and prevent workers from pursuing their livelihoods simply because they left positions in which confidential information was shared. *PepsiCo,* 54 F.3d at 1268.   That is what Plaintiff seeks to do here – prevent Friedman from pursuing his livelihood and chill the marketplace to restrain competition in the broad category of web site design and management.

Clear Channel advances the discredited proposition that Friedman should be barred *per se* from designing and managing web sites, except for Clear Channel.   That argument ignores that

---

[6] Clear Channel relies heavily on *Pepsico*, but that case is inapplicable here.   There, the United States Court of Appeals for the Seventh Circuit found "inevitable disclosure" in a case where the former general manager of a sports drink company left his employment to work for the company's direct sports drink competitor "against the backdrop of fierce beverage-industry competition."   *PepsiCo*, 54 F.3d at 1263-64. The Court found disclosure inevitable only because the executive at issue would have been unable to make decisions at his new employment without relying on trade secrets from his former employer.   *Id.* at 1269.   Here, unlike in *Pepsico*, the past and prospective employers are not even competitors; Friedman left employment with Clear Channel, a radio conglomerate, to work for Local TV, a company that owns television stations.

in a society based on competition, the employee has a right to make use of the "general knowledge and skills acquired through experience in pursing his chosen occupation." *Delta Medical Systems*, 331 Ill. App. 3d at 791. It is also why courts routinely have held that the "mere fact that [the employee] acquired some of those skills while working for [plaintiff] does not mean that he must work for [plaintiff] or not work at all." *FMC Corp. v. Cyprus Foote Mineral Co.*, 899 F. Supp. 1477, 1482 (W.D.N.C. 1995); *Teradyne*, 707 F. Supp. 353. Merely showing that an ex-employee has knowledge of trade secrets is not enough; the former employee must show that the new employer will necessarily use and the former employee will necessarily disclose any confidential information in performing his work. *Id.*

Clear Channel does not – and cannot – make such a showing here. Absent any actual evidence that confidential information was taken, Clear Channel merely contends that because Mr. Freidman had access to its information at one time, he will necessarily use that information when working for Tribune or Local TV. But Clear Channel is engaged in a dramatically different field than Tribune and Local TV and the only information Friedman would retain in his memories is the general skills, knowledge and expertise acquired through his experience, to which Clear has no trade secret right. *Delta Medical Systems*, 331 Ill. App.3d at 791.

## II. Clear Channel Has Not Demonstrated Irreparable Harm Absent a Temporary Restraining Order.

Clear Channel also fails to demonstrate any irreparable harm absent a TRO. As noted above, Friedman has obtained no trade secrets from Clear Channel and, even if he had, neither Tribune nor Local TV has any interest in learning about or obtaining confidential trade secret information about Clear Channel's on-line or internet strategy, business plans, or the like (to extent such information exists in the first place). Accordingly, there is no irreparable injury

absent a TRO because Clear Channel cannot demonstrate any risk that Tribune or Local TV will use any of its confidential, propriety information (to the extent it exists).[7]

### III.    Clear Channel's Tortious Interference with Contract Claim Cannot Be the Basis for a Temporary Restraining Order.

Clear Channel also seeks a temporary restraining order based on its claim against Tribune for tortious interference with contract. Clear Channel cannot establish a likelihood of success on the merits because the undisputed evidence shows that Mr. Friedman approached Tribune about prospective employment, not the other way around. (Friedman Aff. ¶ 5; Gilbert Decl. ¶ 4.) That is competent evidence tending to show that the prospective employer did not tortiously interfere. *See Curtis 1000, Inc. v. Suess*, 843 F. Supp. 443, 452 (C.D. Ill. 1994).[8]

Moreover, even if Clear Channel could establish a likelihood of success on the merits (which it cannot), Clear Channel's tortious interference with contract claim cannot logically serve as the basis for a temporary restraining order here. To the extent Clear Channel's tortious inference claim is inextricably linked to its misappropriation of trade secrets claim, the ITSA explicitly preempts it. *See* 765 ILCS 1065/8(a); *see also Composite Marine,* 962 F.2d at 1265. Alternatively, to the extent Clear Channel's tortious interference claim is distinct from its trade secrets claim, the effect of Tribune's alleged tortious interference could not constitute irreparable harm because Clear Channel's only alleged irreparable harm is misappropriation of trade secrets. (Mem. at 13-14.)

---

[7] None of the other factors favor a TRO here. The balance of harms strongly favors Defendants because a TRO would prohibit Mr. Friedman from working and would needlessly interfere with Local TV's and Tribune's business practices. In contrast, Clear Channel would suffer no harm absent a TRO. Moreover, the public interest also favors Defendants -- and particularly Mr. Friedman -- whose vindication of his right to make use of the "general knowledge and skills acquired through experience in pursing his chosen occupation" is of paramount public interest. *See Delta Medical Systems*, 331 Ill. App. 3d at 791.

[8] Clear Channel cites *Fine Line Distrib., Inc. v. Rymer Meats, Inc.* (Mem. at 13), in support of its claim that an employer's knowledge of a prospective employee's at-will contract satisfies at least one of the elements of a tortious interference claim under Illinois law. That case in inapplicable here because Clear Channel cannot show that Friedman's decision to leave was caused by Tribune's alleged interference.

15

**CONCLUSION**

For the reasons set forth herein, Clear Channel's motion for temporary restraining order

and preliminary injunction should be denied.

Dated: May 21, 2008                            Respectfully submitted,

                                               THE TRIBUNE COMPANY AND LOCAL
                                               TV LLC

                                               By: /s/ John F. Ward, Jr. _____
                                                        One of their Attorneys

David J. Bradford
Terri L. Mascherin
John F. Ward, Jr.
Jason J. Green
JENNER & BLOCK LLP (#05003)
One IBM Plaza
Chicago, IL 60611
(312) 222-9350

## CERTIFICATE OF SERVICE

I, John F. Ward, Jr., an attorney, hereby certify that on May 21, 2008, I electronically filed the foregoing THE TRIBUNES COMPANY'S ANND LOCAL TV LLC'S MEMORANDUM IN OPPOSITION TO CLEAR CHANNEL BROADCASTING, INC.'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTIONS with the Clerk of the Court using the CM/ECF system, and served the filing electronically via the Court's CM/ECF system to:

Roger Pascal
Linda K. Stevens
Julie Furer Stahr
SCHIFF HARDIN LLP
6600 Sears Tower
Chicago, IL  60606
(312) 258-5500

*Attorneys for Plaintiff Clear*
*Channel Broadcasting, Inc.*


Joette S. Doran
Joette S. Doran & Associates, PC
2300 North Barrington Road, Suite 400
Hoffman Estates, Illinois 60169
(847) 490-5309

*Attorney for Andrew Friedman*


_____/s/ John F. Ward, Jr._____
            John F. Ward, Jr.

17