## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 08 C 2884 | **DATE** | 5/23/2008 |
| **CASE TITLE** | Clear Channel Broadcasting, Inc. vs. The Tribune Company et al. | | |

**DOCKET ENTRY TEXT**

For the reasons stated below, the court grants in part and denies in part plaintiff's motion for a temporary restraining order [3]. Plaintiff's motion to expedite discovery [12] and motion for a protective order [13] are granted, subject to revision based on further order of the court or agreements among the parties varying the terms requested in the motions. Plaintiff's motion to seal exhibit [30] was granted on May 22, 2008.

■[ For further details see text below.]    Notices mailed by Judicial staff.

## STATEMENT

"The standards for issuing temporary restraining orders are identical to the standards for preliminary injunctions." *Long v. Bd. of Educ., Dist. 128*, 167 F. Supp. 2d 988, 990 (N.D. Ill. 2001) (internal citation omitted). Thus, to obtain a TRO or preliminary injunction, a party must show that: (1) it is reasonably likely to succeed on the merits of its case; (2) it has no adequate remedy at law; (3) it will suffer irreparable harm, which outweighs the harm the non-moving party will suffer if the injunction is granted; and (4) the injunction will not harm the public interest. *Goodman v. Ill. Dep't of Fin. & Prof'l Regulation.*, 430 F.3d 432, 437 (7th Cir. 2005) (citing *Joelner v. Vill. of Wash. Park, Ill.*, 378 F.3d 613, 619-20 (7th Cir. 2004)). The court employs a "sliding scale" approach, so "the less likely it is the plaintiff will succeed, the more the balance [of harms] need weigh toward its side." *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992).

Clear Channel has failed to make an initial showing sufficient to establish a likelihood of success on its tortious interference with contract claim against The Tribune Company (the "Tribune") and Local TV, LLC ("Local TV"). Friedman and Gilbert both averred that Friedman made the initial outreach, not the Tribune or Local TV. *See* Friedman Aff. I ¶ 5; Gilbert Aff. ¶ 4. Clear Channel put forth no evidence to the contrary. Therefore, Clear Channel has not shown it has a likelihood of success on the merits of the claim. Its motion for a TRO against the Tribune and Local TV is denied.

Clear Channel has made a good showing that it would succeed on its breach of contract claim (at least for breaches of Employment Agreement ¶¶ 2(b), 4). This provides the basis for requiring Friedman to return any confidential materials, but not for enjoining him from working with the other defendants, which requires a showing of an enforceable restrictive covenant and a protectable business interest. Clear Channel has made an adequate (although hardly overwhelming) showing that it would succeed on the merits of its claim for a violation of the Illinois Trade Secrets Act, 765 Ill. Comp. Stat 1065/2(d), viewed in the light of the other three factors as described below. Applying the six-factor test to determine whether a trade secret exists,

**STATEMENT**

outlined in *George S. May Int'l v. Int'l Profit Assoc.*, 628 N.E.2d 647, 653 (Ill. App. 1993), the court finds that Clear Channel has adequately shown a likelihood of success on its claim that the strategies that resulted from Friedman's work interpreting metrics to further the goals of Clear Channel, helping formulate a national strategy for interactive content, and implementing the national strategy at a local level while raising local variables for consideration in the national strategy constitute a trade secret. It is undisputed that Clear Channel has invested a significant amount of money in developing its interactive content business, that interactive content is a valuable new way of presenting information, and that, until it is published on the internet, strategies are competitive. It is less clear to what extent the various parties compete directly, what parts of Friedman's job rely on general knowledge and skills, or how long strategic knowledge remains useful to a competitor given the rapid pace of internet business.

Clear Channel has no adequate remedy at law to compensate it for the loss of its trade secrets. Clear Channel would undoubtedly suffer irreparable harm if the TRO is denied and Friedman uses the knowledge of its interactive content strategies for the benefit of the Tribune and Local TV. Clear Channel could lose its competitive advantage, users could switch allegiances, and advertising revenue could suffer. The court is particularly troubled by the allegations regarding the non-return of Clear Channel's computer, the copying and deletion of files, and the seemingly disingenuous affidavit statement from Friedman that he "had no obligations or responsibilities for Clear Channel on a national or local level for online content." This evidence suggests that Clear Channel has a right to be nervous about its confidential information and its former employee's integrity. In contrast, Friedman will suffer little to no harm, other than being unable to work in his chosen profession for a few weeks. Clear Channel will pay him his salary and there is no evidence in the record to indicate that Friedman would lose his new job if the TRO is granted. Clear Channel made an initial showing sufficient to establish a likelihood of success on the merits of its breach of contract and trade secret claims. The balance of harms strongly favors Clear Channel. The public interest is equally balanced between Friedman's right to work in his chosen profession and Clear Channel's right to protect its confidential information and trade secrets.

As a result of the court's preliminary finding of an adequate showing of both a protectable interest (that is, a trade secret) and Friedman's breach of the Employment Agreement, the court concludes that the restrictive covenant is reasonable and enforceable and not barred by the Broadcast Industry Free Market Act, 820 Ill. Comp. Stat. 17. Weighing all four factors of the TRO test, and noting the significant harm that Clear Channel could suffer if the TRO were erroneously denied, the court grants Clear Channel's motion for a TRO against Friedman. The scope of the TRO is outlined a separate order, issued contemporaneously. The TRO is effectively immediately for a period of ten days, subject to the condition that plaintiff, Clear Channel Broadcasting, Inc. ("Clear Channel") must post a bond in the amount of $100,000 with the clerk's office no later than noon on May 28, 2008. *See* Fed. R. Civ. P. 65(b)-(c). The amount of the security is subject to reconsideration upon parties' argument on Wednesday May 28, 2008 at 9:30 a.m.

The parties shall appear before the court on Wednesday May 28, 2008 at 9:30 a.m. when the court will consider and resolve any disagreements among the parties concerning either expedited discovery or the terms of the protective order. Also at the May 28, 2008 status hearing, the court will set a date for a hearing on plaintiff's request for a preliminary injunction. Unless the parties agree otherwise, it is the court's intention, based on both the potential damage to defendants caused by a temporary restraining order and the limited evidence presented thus far supporting plaintiff's argument that Friedman's employment for The Tribune Company, Inc. endangers plaintiff's protectable interests, to schedule that hearing for sometime during the week of June 2, 2008.