**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CLEAR CHANNEL BROADCASTING, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.  08 cv 2884 |
| THE TRIBUNE COMPANY, LOCAL TV LLC and ANDREW FRIEDMAN, | ) ) ) | Judge Joan B. Gottschall |
| | ) | Magistrate Judge Susan E. Cox |
| Defendants. | ) ) | |

**MOTION FOR PRESERVATION ORDER AND**
**RESPONSE TO MOTION TO VACATE**

Plaintiff Clear Channel Broadcasting, Inc. ("Clear Channel"), by its counsel, hereby (i) responds to defendants' Motion to Vacate the Preliminary Injunction hearing date and (ii) respectfully requests that this Court enter an order requiring the preservation of the hard drives that were requested by Clear Channel in its expedited discovery requests and via subpoena but have not yet been produced.  In support of its Motion, and in response to defendants' motion, Clear Channel states as follows:

1.       The only reason that the parties have been unable to present the Court with an *agreed* order extending the TRO and effecting a stay of the litigation is the defendants' refusal to agree to preserve evidence requested by Clear Channel in its discovery requests and via subpoena.

2.       The Court will recall from the TRO hearing that Friedman was communicating regularly with various Tribune and Local TV employees prior to May 13, *while he was still*

*employed by Clear Channel.* (*See* TRO Exhibit No. 3.)  Tribune and Local TV asked Friedman to perform, and he did perform, services for them while he was still a Clear Channel executive, in violation of his fiduciary duties and in breach of the "exclusivity" provision of his Employment Agreement.  (Id.)  Friedman not only served these two masters at one time, he apparently did so using the same computer – his Clear Channel computer.  (Id.  *See also* Declaration of James Zinn, docket no. 16 filed on 5/20/08, at ¶5.)  Moreover, during this time period, Friedman and Tribune employees were exchanging information and ideas about website content.  (*See, e.g.,* emails dated May 5, 8, 9, 10 and 12, 2008, between Andrew Friedman and various Tribune employees, attached hereto as Exhibit A.)  This is important because (i) Clear Channel's strategies and plans regarding website content are the heart of its trade secrets claims, (ii) Friedman was apparently helping Tribune and Local TV with changes to their website content at the very same time that he was charged with making and implementing the strategies and game plans regarding Clear Channel's website content, and (iii) these communications establish that Friedman the mere "techie guy" for Tribune and Local TV that defendants have told the Court he was hired to be.  (*See* transcript of proceedings on May 21, 2008 at pp. 16-19, attached hereto as Exhibit B.)  This conduct has raised significant questions regarding Tribune's and Local TV's electronic communications with Friedman, such as:

- What was Friedman doing for Tribune and Local TV while still employed by Clear Channel?

- What Clear Channel documents and files did Friedman transmit to Tribune employees?

- Which of the many portable file storage devices that Friedman connected to his Clear Channel computer were also hooked up to a Tribune employee's computer?

- What did Tribune employees do with the Clear Channel information transmitted by Friedman?  To whom were those materials sent?

- What documents and files were deleted by the Tribune employees who were communicating with Friedman?

- Was there any attempt to effect a mass deletion of materials sent by Friedman?

3.      Some of these questions should be partially answered by whatever documents still reside on the pertinent hard drives when defendants finally produce documents, but most of these questions will require an analysis of the computer hard drives of the Tribune employees who were inducing Freidman's breach of contract and fiduciary duty.  Determining what documents have been deleted (or attempted to be deleted), for example, requires access to and analysis of the hard drive, as does the resurrection and recovery of deleted documents.

4.      Consequently, Clear Channel specifically and timely sought the production of "[a]ll computer hard drives, or mirror images thereof, used by anyone who communicated with Friedman on or prior to May 12, 2008, including but not limited to Randy Michaels, James Gilbert and Marc Chase (aka Mark Thompson), including but not limited to any home computer and company computer hard drive located in their respective homes." (*See* Clear Channel's First Set of Document Requests to Defendants Tribune and Local TV LLC, Request No. 9, attached hereto as Exhibit C.)

5.      Clear Channel also served subpoenas on three Tribune employees, Mssrs. Gilbert, Michaels and Chase, who are known to have communicated with Friedman regarding the services that Friedman was providing to Tribune and Local TV while still employed by Clear Channel, seeking "All computer hard drives, or mirror images thereof, used by you to communicate with Friedman, or to store or access communications with Friedman, on or prior to May 12, 2008, including but not limited to any home computer and company computer hard

drive located at your home." (*See* Request No. 9 of the Rider attached to the Subpoenas served on Messrs Gilbert, Michaels and Chase, attached hereto as Exhibit D.)

6.    Defendants have objected to and refused to produce the requested hard drives.

7.    In an attempt to reach an agreement extending the TRO so that the parties could discuss settlement, Clear Channel was, and is, willing to put off the dispute about *production* of these hard drives, so long as defendants and the three subpoenaed employees would agree to image and *preserve* those hard drives, in order to ensure that this evidence is not lost forever.

8.    Defendants refused to agree to image and preserve those hard drives.

9.    Unless the hard drives are imaged and preserved, files and information on those hard drives likely will be altered and overwritten, resulting in the permanent loss of evidence. Even assuming that no one intentionally destroys electronic files, metadata, or the "user" information recorded on those hard drives, the normal and routine operation of a hard drive necessarily results in the destruction and loss of such data and information from that hard drive. *See Ferron v. Search Cactus, L.L.C.*, 2008 WL 1902499 at *1 (S.D. Ohio 2008) ("a distinctive feature of computer operations is the routine alteration and deletion of information that attends ordinary use of the computer. Many steps essential to computer operation may alter or destroy information . . . [and a]s a result, the ordinary operation of computer systems creates a risk that a party may lose potentially discoverable information without culpable conduct on its part.").

10.    Clear Channel understands that if the current TRO is extended, it will not need a preliminary injunction against Friedman during the time period of that extension, and it is willing to arbitrate its claims against Friedman (as it has been since serving the arbitration demand back on May 19, 2008).

11.    However, Clear Channel has claims against Tribune and Local TV that entitle it to discovery, regardless of whether its claims against Friedman are arbitrated.    In support of their motion to vacate the hearing date and this Court's order regarding expedited discovery, defendants argue that all the pertinent claims must be arbitrated, and imply that there is nothing left for this Court to do.  Not so.  Although the Tribune and Local TV would like the Court to view them as above the fray, which they portray as a fight solely between Clear Channel and Friedman, that picture is distorted.  Tribune and Local TV requested and caused Friedman to perform services for them while he was still a Clear Channel executive – e.g., while still employed by Clear Channel, Friedman attended Tribune meetings, interviewed and made recommendations regarding the Tribune's hiring of director-level employees, and provided Tribune with feedback and recommendations regarding its choice of content vendor and pricing. (*See* TRO Exhibit 3 and Exhibit A hereto)  Moreover, Tribune and Local TV were Friedman's employer on the day that he deleted thousands of files from his Clear Channel computer – the morning after his lawyer received Clear Channel's request for return of the computer and just hours before returning that computer to Clear Channel.

12.    Defendants have asserted that Friedman first solicited Tribune and Local TV for a job, and not the other way around.  Even if true, however, such assertions are irrelevant to Clear Channel's claims for tortious interference with contract, inducement of breach of fiduciary duty, and trade secrets misappropriation.  *See Fine Line Distributors, Inc. v. Rymer Meats, Inc.*, 1994 WL 282299 *2-*3 (N.D. Ill. 1994) ("a third party's inducement of, *or knowing participation in*, a breach of duty by an agent is a wrong against the principal that may subject the third party to liability") (emphasis added); *Fidelity National Title Insurance Co. of New York v. Intercounty National Title Insurance Co.*, 161 F. Supp. 2d 876, 885 (N.D. Ill. 2001) (tortious interference

claim stated by allegations that one defendant's conduct "enabled" the other's breach); *Complete Business Solutions, Inc. v. Mauro*, 2001 WL 290196 *6 (N.D. Ill. 2001) (claim for tortious interference stated against new employer by allegations that it had employee perform certain functions that breached his contract).

13.    Clear Channel's claims against Tribune and Local TV therefore are very much alive, and Clear Channel is entitled to discovery as to those claims.

14.    Clear Channel is amenable to delaying the preliminary injunction hearing until it obtains discovery from Tribune and Local TV. Clear Channel would prefer that discovery from Tribune and Local TV proceed on an expedited basis, but it appears that such expedition will be an uphill battle. Thus far, Clear Channel has yet to receive any substantive interrogatory responses or documents from Tribune or Local TV, and Defendants' current motion, their objections to discovery,[1] and their recent motion to quash all suggest that it may be some time before Clear Channel gets that discovery.

15.    Consequently, at the very least, the requested hard drives should be imaged and preserved so that the evidence is available. Clear Channel simply does not want to find itself prejudiced by learning that relevant evidence has been lost as a result of having to wait to get its discovery. If the requested evidence is written over and lost during the period of time that Clear Channel is arbitrating with Friedman, the postponement of the preliminary injunction hearing and the striking of the expedited discovery order will have prejudiced Clear Channel's ability to discover relevant evidence with which to prove its claims.

---

[1] Defendants have objected to even the most obviously relevant discovery requests. By way of one illustrative example, defendants have objected to and refused to answer Clear Channel's interrogatory asking when and how they learned of Friedman's Employment

16.    Additionally, Clear Channel notes that July 19, 2008 is likely to be an inadequate extension of the TRO, because Friedman has failed and refused to consent to expediting the arbitration.  Clear Channel requested his consent to expedite the arbitration procedure when it served the arbitration demand back on May 19, but Friedman did not consent, and so the AAA has been following the normal and non-expedited procedures for arbitration, under which an arbitrator will not be assigned until late June or early July, at the earliest.  It is unfair and inequitable for Friedman to slow down the arbitration, on the one hand, and on the other hand urge a TRO expiration date that will likely precede the completion of arbitration.  This is particularly true when defendants' choice of a 60-day extension period ignores the substantial period of time during which Friedman was admittedly providing services to Clear Channel's competition.  (Paragraph 18 of the Employment Agreement contains a provision tolling the non-compete period during any period of breach.  *See* Exhibit A to Verified Complaint, para. 18)

17.    For this reason, Clear Channel requests that this Court alter the order proposed by defendants to provide that the TRO is extended for 60 days or until the conclusion of arbitration proceedings, whichever is *longer*.  Clear Channel agrees to, and indeed has requested to, expedite the arbitration proceedings so as to avoid any unnecessary delay.

WHEREFORE, Plaintiff Clear Channel Broadcasting, Inc. requests that this Court enter an Order

(a)    requiring Tribune and Local TV to preserve the hard drives requested by Clear Channel in its discovery requests and subpoenas to Messrs. Gilbert, Michaels and Chase *or,*

---

Agreement -- a key question for Clear Channel's tortuous interference claim – claiming lack of relevance.  (*See* Defendants' Responses to Interrogatory No. 3, attached hereto as Exhibit E.)

*alternatively,* denying defendants' motion to vacate the expedited discovery order and setting a Preliminary Injunction hearing date to occur after expedited discovery, and

(b)     if granting defendants' motion to vacate the hearing date and the expedited discovery order, specifying that the TRO is extended for 60 days or until the conclusion of the arbitration proceeding between Friedman and Clear Channel, whichever is later.

Dated:  June 5, 2008

/s/ Linda K. Stevens
Roger Pascal
Linda K. Stevens
Julie Furer Stahr
SCHIFF HARDIN LLP
6600 Sears Tower
Chicago, Illinois  60606
(312) 258-5500

*Attorneys for Plaintiff Clear Channel Broadcasting, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned, an attorney, hereby certifies that on May 21, 2008, she electronically

filed the foregoing Response to "Emergency Motion of the Tribune Company, Local TV LLC

and Andrew Friedman to Vacate Minute Order Setting Preliminary Injunction Hearing and Order

Permitting Expedited Discovery Because Defendants Agree to Interim Relief" with the Clerk of

Court by using the CM/ECF system, which will send notification of such filing to the following:

Terri L. Mascherin
John F. Ward
Jenner & Block LLP
330 North Wabash Ave.
Chicago, Illinois 60611-7603
tmascherin@jenner.com

Joette S. Doran
Joette S. Doran & Associates, PC
2300 North Barrington Road
Suite 400
Hoffman Estates, Illinois 60169
joette@joettedoran.com

/s/ Linda K. Stevens

CHI\5821201.1

# EXHIBIT A

| | |
|---|---|
| **From:** | Andy Friedman [friedman_andy@hotmail.com] |
| **Sent:** | Monday, April 21, 2008 1:46 PM |
| **To:** | Jodi Carlson |
| **Subject:** | FW: Couple Questions |
| **Attachments:** | broadcastlaunch.xls |

We're on.

From: russ@russgilbert.com
To: friedman_andy@hotmail.com
Subject: Re: Couple Questions
Date: Mon, 21 Apr 2008 14:30:45 -0400

- No issue, just gotta keep the rollout happening.
- I'll order you a phone this week. Do you have a preference in terms of model? Let me know, if you don't care it'll be a nice high end blackberry. I prefer windows mobile myself.
- Let's get you official before you call him.
- Yes, provided your official start is actually in April I believe. Otherwise it'll be the beginning of June. Check that with Barb since that's actually how Trib works vs LTV.
- Let's bring in Fists up front and see if we can't use existing resources from there.
- Fair amount of travel till the 40 site rollout ends.
- Let's see what we can do. I've got a fair amount of IO stuff but since I left so abruptly I didn't get to raid their library like I'd hoped I'd be able to.
- Nice. Let me ponder that. I'm sure we can think of a few juicy tidbits.

Some more things to think about this week:

I'm doing budgets this week for operations on the broadcast side. I realize you're handicapped by not knowing the resources we have already, but maybe that's a good thing. If you were setting up an operation handling 40 TV stations from scratch, how would you do it?

Keep in mind as you answer that in Hartford, LA, and South Florida we've got strong potential for mixed newspaper/TV sites. Chicago is another matter, leave a combined site out of the equation there for now. Also, think about how to best play in markets where we have duopolies but the stations aren't equal in terms of news or programming.

What specific functions do you envision for a national content office? A newswire is a given, possibly more than one. Don't forget about content and community elements based around network shows.

What development needs do you foresee for the first 6-12 months? Think in terms of functionality that can be combined and mashed into bigger pieces. Example: Polling tool + photo gallery = rate-a-pic. Boil it down as far as you can. I'm interested to see what you have (include the features we've already discussed like bracket game).

Your first 90-120 days will be spent rolling out sites and establishing the national content office. Our goal is to have all of Tribune done by Labor Day. I need a one-pager on how you'll approach this. The tentative budget and rollout schedule is attached. The "content producer" position is probably Fists - salary negotiable.

----- Original Message -----
**From:** <u>Andy Friedman</u>
**To:** <u>Russ Gilbert</u>
**Sent:** Monday, April 21, 2008 1:56 PM
**Subject:** Couple Questions


Hey RG -

Just some random stuff:

- You guys good with my taking off for that pre-planned trip June 23-July 1?
- How soon can I get a phone? When I quit I'll have to send them my phone.
- I can call that Local LLC News guy if you want - before I start. If you think that would help get him off your back.
- So benefits kick in right when I start?
- I'm still thinking the news thing would work best with dedicated, in-house staff who work shifts, etc. Probably 4+ people. At least. That'll get you nights, weekends, breaking news, national video distribution, entertainment coverage, photos, etc. Of course I have my eye on Fists and the two guys still left in Northfield, but if there's a way to repurpose some existing staff that would be great.
- What kind of travel do you envision? My thought for this job is a fair amount would be wise -- like 1-2 trips per month go meet the players in the field.
- I will miss my CCADS. We'll have to set up a shared tunes server. I'm listening to Further Seems Forever right now and it's sweet.
- What other bits of info do we put into Jimmy's head for him to take to school and tell Ryan Ehlman?

Thanks again

af

| Item | Description | Annual | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Content Producer | TI Central | $50,000.00 | | | | | | $4,166.66 | $4,166.66 | $4,166.66 | $4,166.66 | $4,166.66 | $4,166.66 | $4,166.66 | $29,166.62 |
| Eltron Development | WebSolutions | $230,000.00 | | | | | $90,000.00 | $20,000.00 | $20,000.00 | $20,000.00 | $20,000.00 | $20,000.00 | $20,000.00 | $20,000.00 | $230,000.00 |
| Artwork | | $38,500.00 | | | $11,000.00 | $10,000.00 | | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $38,500.00 |
| Rollout Contractors* | | $125,000.00 | | | | | $25,000.00 | $25,000.00 | $25,000.00 | $25,000.00 | $25,000.00 | $25,000.00 | $25,000.00 | $25,000.00 | $200,000.00 |
| Misc | | $40,000.00 | | | | | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $40,000.00 |
| Leased Content | | $60,000.00 | | | | | | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $35,000.00 |
| | | $1,011,900.00 | $0.00 | $0.00 | $11,000.00 | $13,200.00 | $145,700.00 | $106,533.32 | $106,533.32 | $111,533.32 | $111,533.32 | $111,533.32 | $111,533.32 | $111,533.32 | $940,633.24 |

* Rapid Rollout & Rollout
Contractors past August is
for Local TV, we will do
some kind of chargeback
to cover that

# TI Personnel on Broadcast Project

| Name | % of time |
|------|-----------|
| Jason Jedlinski | 75% |
| Marek Dzik | 50% |
| Brian Burroughs | 50% |
| Mike Dudek | 25% |
| Jeff Vose | 5% |
| Ali Merchant | 15% |

# Tentative Rollout Schedule

| DMA Rank | Designated Market Area (DMA) | Station | Network | Primary URL | Launch Group | Goes Into Production | Live Date | New URL Needed? | New URL | Revenue Potential |
|---|---|---|---|---|---|---|---|---|---|---|
| 21 | St. Louis | KPLR | CW | cw11tv.com | Beta | | 28-Apr | | | |
| 3 | Chicago | WGN | CW | wgntv.com | Beta | 5-May | 20-May | | | |
| 1 | New York | WPIX | CW | cw11.com | 1 | 9-Jun | 20-Jun | Y | | |
| 2 | Los Angeles | KTLA | CW | ktla.com | 1 | 9-Jun | 20-Jun | | | |
| 14 | Seattle-Tacoma | KCPQ | FOX | q13.com | 1 | 9-Jun | 20-Jun | | | |
| 26 | Indianapolis | WXIN | FOX | fox59.com | 1 | 9-Jun | 20-Jun | | | |
| 39 | Grand Rapids-Kalmzoo-B.Crk | WXMI | FOX | wxmi.com | 1 | 9-Jun | 20-Jun | | | |
| 29 | Hartford & New Haven | WTIC | FOX | fox61.com | 2 | 30-Jun | 11-Jul | | | |
| 18 | Denver | KWGN | CW | kwz.com | 2 | 30-Jun | 11-Jul | Y | | |
| 20 | Sacramento-Stkton-Modesto | KTXL | FOX | fox40.com | 2 | 30-Jun | 11-Jul | | | |
| 41 | Harrisburg-Lncstr-Leb-York | WPMT | FOX | fox43.com | 2 | 30-Jun | 11-Jul | | | |
| 53 | New Orleans | WGNO | ABC | abc26.com | 2 | 30-Jun | 11-Jul | | | |
| 10 | Houston | KHCW | CW | khcw.com | 3 | 21-Jul | 1-Aug | Y | | |
| 5 | Dallas-Ft. Worth | KDAF | CW | cw33.com | 3 | 21-Jul | 1-Aug | Y | | |
| 27 | San Diego | KSWB | CW/FOX | sandiegocw.com | 3 | 21-Jul | 1-Aug | Y | | |
| 16 | Miami-Ft. Lauderdale | WSFL | CW | cwsfl.com | 3 | 21-Jul | 1-Aug | Y | | |
| 9 | Washington, DC (Hagrstwn) | WDCW | CW | thecwdc.com | 3 | 21-Jul | 1-Aug | | | |
| 4 | Philadelphia | WPHL | MyN | myphl17.com | 4 | 11-Aug | 22-Aug | | | |
| 26 | Indianapolis | WTTV | CW | thecw4.com | 4 | 11-Aug | 22-Aug | | | |
| 29 | Hartford & New Haven | WTXX | CW | cw20.com | 4 | 11-Aug | 22-Aug | Y | | |
| 23 | Portland, OR | KRCW | CW | portlandscw.com | 4 | 11-Aug | 22-Aug | Y | | |
| 53 | New Orleans | WNOL | CW | neworleanscw8.com | 4 | 11-Aug | 22-Aug | Y | | |
| 14 | Seattle-Tacoma | KMYQ | MyN | myq2.com | 4 | 11-Aug | 22-Aug | | | |

**From:**     Andy Friedman [friedman_andy@hotmail.com]
**Sent:**     Friday, April 25, 2008 2:04 PM
**To:**       Jodi Carlson
**Subject:**  FW: Give this a look

The bonus thing.

---

From: russ@russgilbert.com
To: friedman_andy@hotmail.com
Subject: Re: Give this a look
Date: Fri, 25 Apr 2008 13:57:10 -0500

You won't be a standard employee... again, this works both ways.

I promise we'll take care of you.  You're valued and key to what we're trying to do.  This isn't CC!

> ----- Original Message -----
> **From:** Andy Friedman
> **To:** Russ Gilbert
> **Sent:** Friday, April 25, 2008 1:49 PM
> **Subject:** RE: Give this a look
>
> Tell me if you like the pic. I think it brings out my eyes, which are stunning to begin with.
>
> Should we, upon further thought, just throw in there that I'm eligible to participate in any standard management bonus program that may exist? Reason I push on that one is one time in the past I got burned on that.
>
> Tx again.
>
> > ---
> >
> > From: russ@russgilbert.com
> > To: friedman_andy@hotmail.com
> > Subject: Re: Give this a look
> > Date: Fri, 25 Apr 2008 13:39:52 -0500
> >
> > awesome.
> >
> > > ----- Original Message -----
> > > **From:** Andy Friedman
> > > **To:** Russ Gilbert
> > > **Sent:** Friday, April 25, 2008 1:37 PM
> > > **Subject:** RE: Give this a look
> > >
> > > What do you think about this as something you/we/I could send to R&R, News Blues, etc..
> > >
> > > Andy Friedman has joined Local LLC TV as VP of Interactive Content.
> > >
> > > As such, he will be responsible for adding cool stuff to the Internets.

Friedman comes to the company from Clear Channel Radio where he worked in the Interactive division for 8 years. Among his accomplishments at Clear Channel, Friedman organized the first company barbershop quartet and model airplane club. He also helped design and build an extensive internal news network for online and on air. Friedman said, "Clear Channel is a great place, but I couldn't pass up this new challenge."

Among Friedman's duties at Local LLC, he hunt wildebeast, tend to the company Koi garden and lead yoga classes.

The news and online vet will be based in Chicago, where the Cubs will win it all this year -- really, they will.

(Please check out photo attached.)

---

From: russ@russgilbert.com
To: friedman_andy@hotmail.com
Subject: Re: Give this a look
Date: Fri, 25 Apr 2008 13:22:11 -0500

Not sure of the particulars, but both companies do whatever RM tells them to do.

Let's make sure we're happy with it before I ask someone like Pam or Bobby to sign it.  Once that happens it's a "done deal" in their minds.

----- Original Message -----
**From:** Andy Friedman
**To:** Russ Gilbert
**Sent:** Friday, April 25, 2008 1:01 PM
**Subject:** RE: Give this a look

Good. Let me have HJ take a look. Can I get a signed copy of this in the meantime? If HJ says "go" then I'm all good to quit 9 AM on Monday.

What is the relationship between LTV & Trib? Just a management agreement?

Thanks again

---

From: russ@russgilbert.com
To: friedman_andy@hotmail.com
Subject: Re: Give this a look
Date: Fri, 25 Apr 2008 12:57:47 -0500

1) I asked for their standard boilerplate, so anything in there is what everyone gets.  I'd suggest not putting in a 3% because it's not CC.  They're not going to be dicks about, and you don't want to lock in a number.
2) This won't preclude that, but I don't think they've got that yet at LTV.
3) No problem man, looking out for you.  I assumed you had at least that at CC.
4) We can if you want... but remember again, this isn't CC.  I declined a contract at all, I'm completely at will.  I was at-will at CC too if you recall, and I still got severance and my

5/29/2008

5) Again, we can if you want.  It's just not going to be an issue.
6) Once you're in, we can talk multi-year.  I expect the multi-year deal to be with Trib vs LTV.

----- Original Message -----
**From:** Andy Friedman
**To:** Russ Gilbert
**Sent:** Friday, April 25, 2008 12:36 PM
**Subject:** RE: Give this a look

RG -

I will have HJ take a look. To my uneducated eye, this looks mostly great. Let me bring up a couple small things:

- Should we put something in 3.1 like "Upon employee's anniversary he is entitled to a 3% salary increase" or similar? My CC deal did have that.
- Should we also add something like "employee is entitled to participate in any standard bonus or profit sharing program that is offered to other management"
- I LOVE 3.3. Thank you!!
- Do we add a 4.3 that addresses severance?
- Section 7: I represent that I am lawyered up and good to go to the best of my knowledge. Is that enough? I think after they changed my duties it's clear I can terminate my CC deal for Good Cause.
- Do we add something to the effect that the contract is transferable to co-managed companies; so if we want we can officially move me into TI?
- Once I get in there and things gel a bit we're good to talk multi-year? I like the salary terms here but, as mentioned, I like the idea of locking things in for a bit so I can focus. Also, I got kids.

Please let me know your thoughts.

Thanks again - and thanks for breakfast!

af

_____

From: russ@russgilbert.com
To: friedman_andy@hotmail.com
Subject: Give this a look
Date: Fri, 25 Apr 2008 09:43:06 -0500

**From:**    Abrams, Lee [labrams@tribune.com]

**Sent:**    Monday, May 05, 2008 5:36 PM

**To:**    Friedman, Andy; russ@russgilbert.com

**Subject:** RE: Content Direction

great---seeya then

---

**From:**    Friedman, Andy [mailto:andyfriedman@localtvllc.com]
**Sent:**    Monday, May 05, 2008 5:35 PM
**To:**    Abrams, Lee; russ@russgilbert.com
**Subject:**    Content Direction
**When:**    Monday, May 12, 2008 10:00 AM-11:00 AM (GMT-06:00) Central Time (US & Canada).
**Where:**    AF sees LA

Lee -

So great to meet you today. I'd love to get your take on what we ought to do with our national content offering. Your vision and direction will be integral to anything we do going forward.

Thanks so much

af

5/29/2008

From:           Gilbert, Russ [rgilbert@tribune.com]
Sent:           Thursday, May 08, 2008 8:39 PM
To:             Friedman, Andy
Subject:        RE: Field Staffing


I believe that's correct.  I think news is the low hanging fruit.

---

From: Friedman, Andy [mailto:andyfriedman@localtvllc.com]
Sent: Thu 5/8/2008 8:34 PM
To: Gilbert, Russ
Subject: RE: Field Staffing


So to make sure I'm current ..

TI pays Brandi (she's a fine girl, what a good wife she would be)

Brandi works for WGN

And makes sure WGN supposedly contributes content?

Maybe that's the best approach. My instinct is to buddy up to the ND's, make them feel very well served and have them carry that water. But it's very possible things may be too F-d up for that to work.

---

From: Gilbert, Russ [rgilbert@tribune.com]
Sent: Thursday, May 08, 2008 7:12 PM
To: Friedman, Andy
Subject: RE: Field Staffing

agree 100%.  While I'm fine tasking people in the field to contribute something central, if they're primarily working for the stations, they should be part of the station so we don't get f'ed up situations like WGN.

---

From: Friedman, Andy [mailto:andyfriedman@localtvllc.com]
Sent: Thu 5/8/2008 6:25 PM
To: Gilbert, Russ
Subject: RE: Field Staffing


Let's fold into this conversation people like Linda Fongemy and other TI-Broadcast people who do content but are in the field and do work for these TV stations.

1

My thought is having remote people do content is tough -- I've learned the hard way -- and TV stations oughta pay for their own people.

I think this is also a way we can get our content budget number lower. And it seems that from what I hear no essential, critical tasks are being done by these people.

What do you think of this?

The goal might be to keep these people on board, but to have the stations pick up the payroll for them.

---

From: Gilbert, Russ [rgilbert@tribune.com]
Sent: Thursday, May 08, 2008 5:06 PM
To: Davidson, Tom; Jedlinski, Jason; Friedman, Andy
Subject: Field Staffing

Imagine my horror to find that I started this email this AM and am only finishing it now.

We have 14 days to come up with a plan to staff each market, starting today.

Part of this process needs to be scheduling time with each GM to talk, but we need to have this wrapped up by the 22nd at the latest.

Jason, I think you've already got thoughts along these lines and your tier 1-4 framework will serve as a good starting point.  We need to consider duopoly situations and supersites, etc.

Tom - do you have a GM call schedule yet?

This will be the main order of business on Monday's call.

| | |
|---|---|
| **From:** | Gilbert, Russ [rgilbert@tribune.com] |
| **Sent:** | Friday, May 09, 2008 3:15 PM |
| **To:** | Friedman, Andy |
| **Subject:** | RE: wgnmorningnews.com |

Ideally it'd be a main menu item on WGN with some decent front page presence.

If they're inclined to argue the point I don't care *that* much about giving them their own domain, though I think that's counter-productive.  In either case as far as the system, traffic, and metrics are concerned it will ultimately be a part of WGN.

---

From: Friedman, Andy [mailto:andyfriedman@localtvllc.com]
Sent: Fri 5/9/2008 12:09 PM
To: Gilbert, Russ
Subject: RE: wgnmorningnews.com


Great stuff for sure.

Necessary to have separate brand & url for this?

Maybe just subset of WGN TV site?

Maybe not very important issue but just curious since a lot of sub-branding seems to be going on around here.

---

From: Jedlinski, Jason [JJedlinski@Tribune.com]
Sent: Thursday, May 08, 2008 9:53 PM
To: Gilbert, Russ; Friedman, Andy; Gilbert, Russ
Subject: FW: wgnmorningnews.com

Our visit to WGN today reminded me that morning sports anchor Pat Tomasulo sent this proposal to Brandi exactly two months ago, right as we embarked on The Great Ektron Adventure(TM).

It's a good peek at the "best & brightest" our station group has to offer.

Once we get markets past their obsession with copying sites like ABC7Chicago.com; we can focus our time and energy on high-potential products like this.

A few tweaks, not to take away from Pat's enthusiasm:
-- This shouldn't be foremost an extension of the TV show. It needs to have a life and personality of its own that embraces the possibilities of the medium: more interactivity, more exclusive content, not just things that were "too tasteless" to make air or that you may want to "see again."
-- We should admit that this will take time & resources to do properly.
I'd hate to watch a TV morning show where the focus was on things that "only take a few minutes to put together."

That said, THIS is the kind of product with which we'll change the world. It's hard to match the viral and community-building potential of a site that taps into such a fanatic and fiercely-loyal group of users. It's like www.cubs.com, except probably an even more advertiser-friendly demographic.

Jason

**From:** Jedlinski, Jason [JJedlinski@Tribune.com]
**Sent:** Saturday, May 10, 2008 7:49 AM
**To:** Friedman, Andy
**Cc:** Davidson, Tom; Gilbert, Russ
**Subject:** RE: WorldNow: Video Content Available

I'd have to defer to Molly Davis, our central video producer/coordinator, who's probably the only one reviewing this material on a regular basis.

I do not think our Tribune stations are familiar with the content, and they certainly do not know the business terms or revenue share.

I know so little about it because I agree with you: it's average at best. Never seemed worth our while. We won't miss it.

Jason

---

**From:** Friedman, Andy [mailto:andyfriedman@localtvllc.com]
**Sent:** Saturday, May 10, 2008 7:25 AM
**To:** Jedlinski, Jason
**Cc:** Davidson, Tom; Gilbert, Russ
**Subject:** RE: WorldNow: Video Content Available

Jason -

Is this stuff any good and do stations like it? At first blush and from my experience with this it seems kind of average.

Do you get flack from the stations over the fact that WN sells the video pre-rolls and the stations can't?

Thanks for sharing this.

af

---

**From:** Jedlinski, Jason [JJedlinski@Tribune.com]
**Sent:** Friday, May 09, 2008 9:29 PM
**To:** Friedman, Andy
**Cc:** Davidson, Tom; Gilbert, Russ
**Subject:** FW: WorldNow: Video Content Available

Andy, here's some of the franchise video content that's available as part of Tribune and LocalTV's WorldNow license fees.

---

**From:** Liza Watts [mailto:LWatts@worldnow.com]
**Sent:** Friday, August 10, 2007 9:05 AM
**To:** Client Services
**Subject:** WorldNow: Video Content Available

Good morning,
We are very pleased to announce several sources of supplemental video content available through our Producer to licensees of the WorldNow video tools.

To receive access to any of the video content, simply forward this email to content@worldnow.com with a list of the sources you would like to be able to access and use. Once you have been given access to a content provider Producer,

this provider will appear within your own Producer tool in the "Content Source" dropdown menu. Simply switch the dropdown to the desired provider, search for categories or clips as you would your own, and use them according to the rules below.

All of the national video is being made available through revenue sharing agreements and is supported by national pre-roll advertising. The pre-roll cannot be sold on a local basis. WorldNow will split revenue with participating affiliates 50/50.

· **TipVision**
Producer: TIPVISION
Allowable use: WMV and Flash

Produced with high production values and an upbeat vibe, TipVision lends polish and lilt to any website. We will be receiving videos in the areas of Do-it-yourself, Fashion, Technology, Fitness and Cooking (we'll be starting with about 5 videos in each area and adding one new one each week).

· **Green Grocer**
Producer: GREENGROCER
Allowable use: WMV and Flash

The Green Grocer has been providing tips on-air for more than 10 years-everything from how to buy produce to how to store it to how to prepare it.

· **Digital Trends**
Producer: DIGITALTRENDS
Allowable use: WMV and Flash

Digital Trends helps people make the most of the hi-tech lifestyle by providing sneak peeks, one-of-a-kind reviews, editorials and news about trendsetting consumer technology products and services. By focusing on products that incorporate style along with cutting edge functionality, Digital Trends has become an indispensable resource for people who embrace the best of what technology can offer.

· **Reuters**
Producer: REUTERSVIDEO
Allowable use: **Flash only**

Reuters has 2,400 staff in 196 bureaus around the world. In 2006, they filed over 2.5 million news items. We make up to 20 clips from Reuters available each day in the areas of International News, National News and Entertainment News.

**By forwarding this email to content@worldnow.com and requesting access to the Reuters video, you are agreeing to only use it in this capacity. If you assign the clips as Windows Media Player clips or assign full categories directly to your site so that clips are accessed as Windows Media Player clips, your access to this content will be turned off.**

If you have any questions or need help using this content, please do not hesitate to contact your Client Services Representative at 212-931-1250. Thank you.

**Liza Watts> Senior Client Services Manager**
WorldNow >747 Third Avenue, 17th Floor, New York, NY 10017
**Internet Technology & Revenue Solutions**

D: 212.931.1218
C: 917.771.2337
T: 212.931.1200
F: 212.931.1299
lwatts@worldnow.com
www.worldnow.com

*This message may contain confidential and/or privileged information. If you are not the addressee or authorized to receive this for the addressee, you must not use, copy, disclose or take any action based on this message or any information herein. If you have received this message in error, please advise the sender immediately by reply e-mail and delete this message. Thank you for your cooperation.*

**From:** Mazzaferri, Gina M. [GMazzaferri@tribune.com]
**Sent:** Monday, May 12, 2008 2:29 PM
**To:** Friedman, Andy; Baker
**Cc:** Charlier, Steve
**Subject:** RE: Tribune Broadcast Group DUA(5456_2).doc

All for it as it will eliminate rights issues with sharing content.

Steve...any Local TV stations that aren't AP users?  I know we are hoping to launch WSFL/Sun Sentinel news without AP, so will need to make sure we can use AP content on website...perhaps under umbrella of the Sun Sentinel.

Gina

---

**From:** Friedman, Andy [mailto:andyfriedman@localtvllc.com]
**Sent:** Monday, May 12, 2008 2:23 PM
**To:** Baker, Cissy; Mazzaferri, Gina M.
**Cc:** Charlier, Steve
**Subject:** RE: Tribune Broadcast Group DUA(5456_2).doc

Hi there -

What is everyone's thought about including Local TV in this deal? We had kicked that around on the phone earlier.

As far as TI's ability to distribute national & world news to the sites, might it be useful to define a base level of service that we could put on all the web sites?

Thanks again

af

---

**From:** Baker, Cissy [CBaker@tribune.com]
**Sent:** Monday, May 12, 2008 2:05 PM
**To:** Mazzaferri, Gina M.; Friedman, Andy
**Subject:** FW: Tribune Broadcast Group DUA(5456_2).doc

Andy
The draft Gina sent you is several versions old.
I have attached the latest version which was passed back and forth in mid-March.

---

**From:** Washburn, Lisa
**Sent:** Friday, March 14, 2008 12:43 PM
**To:** Baker, Cissy
**Subject:** FW: Tribune Broadcast Group DUA(5456_2).doc

---

-----Original Message-----
**From:** Galt, George [mailto:GGalt@ap.org]
**Sent:** Friday, March 14, 2008 10:00 AM
**To:** Washburn, Lisa

**Subject:** Tribune Broadcast Group DUA(5456_2).doc

Lisa:

Here is the DUA.

George


```
The information contained in this communication is intended for the use
of the designated recipients named above. If the reader of this
communication is not the intended recipient, you are hereby notified
that you have received this communication in error, and that any review,
dissemination, distribution or copying of this communication is strictly
prohibited. If you have received this communication in error, please
notify The Associated Press immediately by telephone at +1-212-621-1898
and delete this email. Thank you.
[IP_US_DISC]
msk dccc60c6d2c3a6438f0cf467d9a4938
```

**From:**    Charlier, Steve
**Sent:**    Monday, May 12, 2008 5:00 PM
**To:**    Friedman, Andy
**Cc:**    Vickers, Denise; Baker
**Subject:** RE: Web Content

Until we all get in the same room and re-evaluate the AP contracts on a station by station basis, I would not cut a group deal. We will eventually reduce our dependence on AP. The next step will be to cut the deals to the minimum level of service for each station. I think we'll have to work around this for a little while.

I'm going to copy Denise Vickers and Cissy Baker on this e-mail. Denise facilitate the current Local TV News Director call on Friday mornings. Cissy conducts a monthly call with the Trib ND's I would like to make this call weekly very soon. May not want to put you on the Trib call until Clear Channel issues are ironed out. Denise and Cissy...meet Andy, he's our new web news/content guy at a corporate level. Denise, line him up as a guest speak on Friday's call. Cissy, I'll fill you in on Wednesday.

Andy, Hope to get back to Chicago in the next two weeks. Lets meet up again at that time. Until then, send me your contact info when you get an office and cell.


Steve

**From:** Friedman, Andy
**Sent:** Thursday, May 08, 2008 8:00 AM
**To:** Charlier, Steve
**Subject:** Web Content

Hi Steve -

So great to meet you hear in Chicago this week.

I'm just starting to get my arms around this big beast. So far, it's like untangling barbed wire.

One thing that seems to be a glaring issue is that print & broadcast have different licensing arrangements for syndicated web content: AP, sports, photos, etc. That means you have a lot of overlap with personnel-related efforts. Very inefficient. And it really limits the amount of content that goes to the sites and the timeliness.

The most difficult thing is AP. I agree the end-game will be to get them out of our house completely. For now, I'm wondering if it would make sense to sign a group-wide AP re-use deal. My bet is most/all of the TV newsrooms get something like the print wire anyway, so that would likely allow us to service all web properties (print & broadcast) with a single information-based web product.

What is your thought about this? I needed your opinion before I placed a call to my people at AP.

As far as video is concerned, I kind of see it now the same way you do -- need to aggregate locally-produced video and present in a network-wide channel or menu type system. The papers are paying CNN and the TV stations mostly get it piggy-backed via network re-use.

My thought about calling the ND's and introducing myself is I'll start by saying hello on your upcoming conf call as you had mentioned. Good idea. there.

You mentioned the need for local staffing guidelines. We're on it.

I'm also working on a very EASY metrics solution; I'll send that to you once I have something to see.

Anyway, I'm diving in as best I can and am pleased to be working with you!

Thanks

af

# EXHIBIT B

1

1       IN THE UNITED STATES DISTRICT COURT
        NORTHERN DISTRICT OF ILLINOIS
2            EASTERN DIVISION

3   CLEAR CHANNEL BROADCASTING,INC.,        )
                                            )
4              Plaintiff,                   )
                                            )
5              -vs-                         )   No. 08 C 2884
                                            )
6   THE TRIBUNE COMPANY, et al.,            )   Chicago, Illinois
                                            )   May 21, 2008
7              Defendants.                  )   9:00 a.m.

8
                    TRANSCRIPT OF PROCEEDINGS
9          BEFORE THE HONORABLE JOAN B. GOTTSCHALL

10  APPEARANCES:

11  For the Plaintiff:        SCHIFF HARDIN LLP
                              6600 Sears Tower
12                            Chicago, Illinois  60606
                              BY:  MS. LINDA K. STEVENS
13

14  For the Defendants:       JENNER & BLOCK
                              330 North Wabash
15                            Chicago, Illinois  60611
                              BY:  MS. TERRI LYNN MASCHERIN
16

    For Defendant Friedman:   JOETTE S. DORAN & ASSOCIATES. P.C.
17                            2300 North Barrington Road
                              Hoffman Estates, Illinois  60195
18                            BY:  MS. JOETTE S. DORAN

19

20
                    COLETTE M. KUEMMETH, CSR, RMR
21                     Official Court Reporter
                     219 South Dearborn Street
22                          Room 2328-A
                     Chicago, Illinois  60604
23                        (312)554-8931

24

25

16

the Tribune says, is gearing less toward news and more toward

other content, and that's the basis, the major basis on which

the Tribune thinks the jobs have nothing to do with each

other?

MS. MASCHERIN:  No, your Honor.  It's one part of

why the jobs have nothing to do with one another, but

fundamentally what he's been hired to do for -- and he's an

employee of local TV, not of the Tribune.  What he's been

hired to do is to take the Tribune and local TV's existing

website platforms, to take the broadcast content that's

generated by TV stations owned by those companies, and by the

Tribune newspapers, and WGN TV, and figure out ways to bring

that content together to make it available so that the

individuals at the separate local TV new stations, at the

Tribune, who run the websites for those entities, have a menu

to choose from of the content that's generated by Tribune

Company and local TV broadcast stations, and TV stations, and

newspapers.  And they'll have a menu, they can choose what

they want, which of that content they wish to put on the WGN

TV website or on the W, X, Y, Z website in Wichita Falls, or

whatever the case may be.

THE COURT:  You're describing, though, what sounds

like just a tech job.

MS. MASCHERIN:  He is a techie.  That's what he is.

He's not a manager.  He's a technical guy who figures out how

17

1    to get content and make it available to put on websites.

2              THE COURT:  Who decides at the Tribune what content

3    it makes most sense to make available?

4              MS. MASCHERIN:  The individual stations run the

5    websites is my understanding, your Honor.  So the individuals

6    responsible for the WGN TV website would decide which of the

7    content -- they have their own content that they generate,

8    and they might want to pick up content from another station

9    somewhere in the country, and he's making it available to

10   them.

11             THE COURT:  Give me an example of what we're

12   talking about that I might understand.

13             MS. MASCHERIN:  There is The Tribune Company which

14   has the Chicago Tribune, Los Angeles Times -- I don't know if

15   that's still owned or not -- but a number of other newspapers

16   throughout the country.  They generate news contents every

17   day.  They produce articles, editorials.  That is available

18   electronically to Mr. Friedman.  Mr. Friedman --

19             THE COURT:  Let me go back a second.  I'm really

20   behind you on this.  If I go to my computer and put in

21   wwwTribune.com I get something.

22             MS. MASCHERIN:  Right.

23             THE COURT:  Is that the basic thing?

24             MS. MASCHERIN:  No.

25             THE COURT:  I suppose if I put in WGN.com I would

18

1   get something, too.

2           MS. MASCHERIN:   No, it's not -- it is the website,

3   you would get the website that the Tribune runs, or the

4   website that WGN TV runs, but that's not what Mr. Friedman is

5   going to be running.   What he's going to be doing is

6   basically figuring out a way to set a platform so that the

7   companies that are within this family, the stations that are

8   within this family of companies, either the Tribune

9   newspapers and WGN TV, or the local TV stations elsewhere in

10  the country, can share that content.

11          So if I'm the website manager for W, X, Y, Z, which

12  is purely hypothetical, in Wichita Falls, Texas, I can go on

13  this platform, and I can say:   I see that the Tribune has an

14  interesting story today about Barack Obama's speech in

15  Des Moines last night, and I see that oh, so and so up in

16  Portland, Maine has an interesting human interest story about

17  something, and I can pull that, and I can put together my

18  content from this shared base of content that is Tribune and

19  local TV generated, and I can choose to put that on my local

20  TV, W, X, Y, Z website down in Wichita Falls so my listeners

21  and watchers in Wichita Falls can access that.

22          THE COURT:   So your view is all he's doing in this

23  job is creating better technological content that's easier

24  for everybody --

25          MS. MASCHERIN:   Exactly.

19

1         THE COURT:  -- to share and access.

2         MS. MASCHERIN:  Exactly.

3         THE COURT:  Does Clear Channel agree that that's

4    his job?

5         MS. STEVENS:  We obviously don't have any inside

6    information about what his job is other than what we have

7    been told.  Mr. Friedman was quite clear he when left, in

8    speaking with his supervisor, that his new duties for the

9    Tribune were going to be exactly his duties for his last

10   previous two positions at Clear Channel.

11        THE COURT:  The point is made that his job duties

12   at Clear Channel changed in some fairly substantive way,

13   what, a year and a half ago?

14        MS. STEVENS:  June of '07.  What happened then,

15   your Honor, was Mr. Friedman had been working with respect to

16   news content.  Okay?  Exactly the type of thing that the

17   Tribune is trying to put a fence around and say:  Well, we

18   focus on news.

19        THE COURT:  What about news content was he doing,

20   though?

21        MS. STEVENS:  He was helping the company to

22   formulate strategy and initiatives, what kind of news should

23   we put on our website:  Local, national, what ratio of each.

24   Where should we put it; how should we display it; should it

25   be video, photo, text; what proportion of each; what makes

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **CLEAR CHANNEL BROADCASTING, INC.,** ) | |
| ) | |
| ) | |
| **Plaintiff,** ) | |
| ) **Case No. 08 cv 2884** | |
| **v.** ) | |
| ) **Judge Joan B. Gottschall** | |
| **THE TRIBUNE COMPANY, LOCAL TV** ) **Magistrate Judge Susan E. Cox** | |
| **LLC and ANDREW FRIEDMAN,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## PLAINTIFF'S FIRST SET OF DOCUMENT REQUESTS TO DEFENDANTS TRIBUNE COMPANY AND LOCAL TV LLC

Plaintiff Clear Channel Broadcasting, Inc. ("Clear Channel"), by its undersigned attorneys, pursuant to Federal Rule of Civil Procedure 34 and the Court's order granting expedited discovery, requests that Defendant The Tribune Company ("Tribune") and Local TV LLC ("Local TV") (collectively herein, "Defendants"), produce for inspection and copying all documents described below in their possession, custody, or control at the law offices of Schiff Hardin LLP, 6600 Sears Tower, Chicago, Illinois 60606, on the date as agreed to by counsel or otherwise ordered by the Court.

## DEFINITIONS AND INSTRUCTIONS

1.    The term "document" includes any writing, graphic matter, or other tangible thing, whether printed, recorded, produced by any process, or written and produced by hand, including but not limited to: letters; reports; other written communications; correspondence; e-mail messages, instant messages and other electronic "text" messages; recorded voice messages; telegrams; memoranda; summaries; records of oral conversations; telephone logs or other telephone records; original or preliminary notes; diaries; calendars; travel records or itineraries; forecasts; analyses; lab reports; projections; work papers; photographs; tape recordings; models;

**REQUEST NO. 4:** All documents reflecting, regarding or relating to any discussions or meetings (including conference calls and strings of emails, instant, or other text messages) in which Friedman participated or attended.

**REQUEST NO. 5:** All documents, including but not limited to electronic or paper files or documents, emails, instant messages or other text messages, and all other communications, received from Friedman, or sent by either Defendant (or by any employee or agent of any Defendant) to Friedman, since June 1, 2007.

**REQUEST NO. 6:** All documents and communications relating to any Clear Channel employee, including but not limited to Clear Channel's employment agreement with Friedman or with any other current or former Clear Channel employee.

**REQUEST NO. 7:** All documents, including but not limited to email communications, plans, strategies, proposals, correspondence, notes or summaries, relating to Clear Channel's business operations that either were created by or received from any current or former Clear Channel employee or are based upon information created by or received from a current or former Clear Channel employee..

**REQUEST NO. 8:** All documents, including but not limited to email communications between Defendants and any Clear Channel employee, regarding the possible employment of any Clear Channel employee by any Defendants, created or sent since June 1, 2007.

**REQUEST NO. 9:** All computer hard drives, or mirror images thereof, used by anyone who communicated with Friedman on or prior to May 12, 2008, including but not limited to Randy Michaels, James Gilbert, and Marc Chase (aka Mark Thompson), including but not limited to any home computer and company computer hard drive located in their respective homes.

**REQUEST NO. 10:** All documents referring to the plans, strategies, initiatives, ideas and/or schedules for content of Defendants' Website Content created, sent or received since June 1, 2007.

# EXHIBIT D

Issued by the

# United States District Court
## For the Northern District of Illinois

Clear Channel Broadcasting Industries, Inc.

v.

The Tribune Company, Local TV, LLC, and
Andrew Friedman

**SUBPOENA IN A CIVIL CASE**

Case Number[1]:  08 cv 2884

TO:     **Randy Michaels**
        **c/o Terri Mascherin**
        **Jenner & Block**
        **One IBM Plaza**
        **330 N. Wabash Ave.**
        **Chicago, IL 60611**
        **TMascherin@jenner.com**

__ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified
below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

_x_ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in
the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Schiff Hardin LLP<br>6600 Sears Tower<br>Chicago, Illinois 60606 | To be arranged |

**X** YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the
place, date, and time specified below (list documents or objects):  **SEE ATTACHED RIDER**

| PLACE<br>Schiff Hardin, LLP, 6600 Sears Tower, Chicago, IL 60606 | DATE AND TIME |
|---|---|

__ YOU ARE COMMANDED to produce and permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

　　　Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more
officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person
designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br>LINDA STEVENS,  ATTORNEY FOR PLAINTIFF | DATE<br>MAY 26, 2008 |
|---|---|

ISSUING OFFICER⬚S NAME, ADDRESS, AND PHONE NUMBER
SCHIFF HARDIN, LLP, 6600 SEARS TOWER, CHICAGO, IL 60606, 312-258-5667

---

[1] If action is pending in district other than district of issuance, state district under case number.

Issued by the

# United States District Court
### For the Northern District of Illinois

Clear Channel Broadcasting Industries, Inc.

**SUBPOENA IN A CIVIL CASE**

v.

The Tribune Company, Local TV, LLC, and
Andrew Friedman

Case Number[1]:  08 cv 2884

TO:  **James Gilbert
c/o Terri Mascherin
Jenner & Block
One IBM Plaza
330 N. Wabash Ave.
Chicago, IL 60611
TMascherin@jenner.com**

__ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

_x_ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Schiff Hardin LLP<br>6600 Sears Tower<br>Chicago, Illinois 60606 | To be arranged |

**X** YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):  **SEE ATTACHED RIDER**

| PLACE<br>Schiff Hardin, LLP, 6600 Sears Tower, Chicago, IL 60606 | DATE AND TIME |
|---|---|

YOU ARE COMMANDED to produce and permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br>LINDA STEVENS,  ATTORNEY FOR PLAINTIFF | DATE<br>MAY 26, 2008 |
|---|---|

[1] If action is pending in district other than district of issuance, state district under case number.

Issued by the

# United States District Court
### For the Northern District of Illinois

Clear Channel Broadcasting Industries, Inc.

       v.

The Tribune Company, Local TV, LLC, and
Andrew Friedman

## SUBPOENA IN A CIVIL CASE

Case Number[1]: 08 cv 2884

TO:    **Marc Chase (aka Mark Chase, Marc Thompson, or Mark Thompson)**
        **c/o Terri Mascherin**
        **Jenner & Block**
        **One IBM Plaza**
        **330 N. Wabash Ave.**
        **Chicago, IL 60611**
        **TMascherin@jenner.com**

__ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

_x_ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Schiff Hardin LLP<br>6600 Sears Tower<br>Chicago, Illinois 60606 | To be arranged |

**X** YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): **SEE ATTACHED RIDER**

| PLACE<br>Schiff Hardin, LLP, 6600 Sears Tower, Chicago, IL 60606 | DATE AND TIME |
|---|---|

YOU ARE COMMANDED to produce and permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

      Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br><br>LINDA STEVENS, ATTORNEY FOR PLAINTIFF | DATE<br>MAY 26, 2008 |
|---|---|

---

[1] If action is pending in district other than district of issuance, state district under case number.

or production under specified conditions if the serving party:

## SUBPOENA RIDER

## DEFINITIONS AND INSTRUCTIONS

1.      The term "document" includes any writing, graphic matter, or other tangible thing, whether printed, recorded, produced by any process, or written and produced by hand, including but not limited to: letters; reports; other written communications; correspondence; e-mail messages, instant messages and other electronic "text" messages; recorded voice messages; telegrams; memoranda; summaries; records of oral conversations; telephone logs or other telephone records; original or preliminary notes; diaries; calendars; travel records or itineraries; forecasts; analyses; lab reports; projections; work papers; photographs; tape recordings; models; graphs; statistical statements; notebooks; charts; plans; drawings; minutes or records of meetings; minutes or records of conferences; expressions or statements of policy or rules; lists of persons attending meetings or conferences; reports and summaries of investigations; opinions or reports of consultants; evaluations; records; recordings on disk or tape; archive records, whether recorded on volatile or nonvolatile media; hard drives, whether from laptop or desktop computers; and portable computer storage media, including but not limited to floppy disks, CD-ROMs, Zip drives, or flash media.

2.      "Clear Channel" means Plaintiff Clear Channel Broadcasting, Inc., and any and all of its affiliates, subsidiaries, or units, and any or all of its agents, employees, directors, or officers.

3.      "Friedman" means Defendant Andrew Friedman.

4.      "Tribune" means Defendant The Tribune Company and includes any and all of its subsidiaries, affiliates, divisions, or units (including any newspaper or television station) and its and their agents, employees, directors or officers.

5.      "Local TV" means Defendant Local TV, LLC and includes any and all of its subsidiaries, affiliates, divisions, or units (including any newspaper or television station) and its and their agents, employees, directors or officers.

6.    "Defendants" means The Tribune Company and Local TV, LLC, and includes any and all of its subsidiaries, divisions, or units, and their agents, employees, directors or officers.

7.    "Website Content" means the type and substance of, as well as the style, manner and means of presentation (e.g., whether text, photo, video, streaming, or static) of, material, information and features that are disseminated or displayed on any Tribune or Local TV LLC website, or that is being considered, proposed, or discussed for display or dissemination on such a website.

8.    The terms "and" and "or" shall be construed conjunctively or disjunctively, or both conjunctively and disjunctively, so as to acquire the broadest meaning possible. The singular form of a word shall be interpreted as a plural as well, and vice-versa.

9.    The terms "relating to" and "relate" mean directly or indirectly referring to, pertaining to, constituting, discussing, describing, referencing, evidencing, concerning, describing, constituting, or having anything to do with, in whole or in part.

10.    The documents to be produced are those which are in your possession, custody, or control or in the possession, custody or control of your agents, employees, officers, or representatives (including, but not limited to, their attorneys, accountants, and consultants).

11.    If you object to any portion of any request, state the specific grounds for such objection and produce all documents which you do not object to producing.

12.    In the event any document or thing responsive to these requests is not provided by reason of a claim of privilege or work product, or for any other reason, then the following is requested with respect to such document or thing: (a) a brief description of the subject matter of the document or thing; (b) the identity of the author or creator of the document or thing; (c) the source of the document or thing; (d) all recipients of the document or thing (including, but not limited to, those receiving copies and blind copies); (e) the date the document or thing, or any copy or draft thereon which is not identical to the original, was created; and (f) the basis upon which the document or thing is being withheld.

13.    In the event any document or thing responsive to these requests is not provided because the document or thing has been altered or destroyed, then the following is requested with respect to such document or thing: (a) a brief description of the subject matter of the document or thing; (b) the identity of the author or creator of the document or thing; (c) the source of the document or thing; (d) all recipients of the document or thing (including, but not limited to, those receiving copies and blind copies); (e) the date the document or thing, or any copy or draft thereon which is not identical to the original, was created; (f) the date or approximate date the document or thing was altered or destroyed; and (g) the person or persons responsible for the destruction or alteration of the document or thing.

14.    Any document responsive to any request should be identified as being responsive to the specific request involved.  If the same document is responsive to more than one request, all requests to which it is responsive should be identified.

15.    All requests are to be construed as continuing in nature and requesting supplementation up to and throughout the time of the preliminary injunction hearing or trial.

## REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

**REQUEST NO. 1:**  All documents, including all communication by between any Defendant or any employee or agent of any Defendant on the one hand and Friedman on the other hand, regarding or relating to the possible or actual employment of Friedman by either Defendant or the recruitment of, interviewing of, consideration for employment of, and/or hiring of Friedman.

**REQUEST NO. 2:**  All documents relating to Friedman's current position with either Defendant, including but not limited to his superiors, his reports, a chart reflecting his placement in the organizational structure, a job description, communications setting forth or referencing his job duties, and other documents relating to his job title, duties, and responsibilities.

**REQUEST NO. 3:**  All communications and other documents generated, provided or sent by Friedman in furtherance of his performance of services for any Defendant or his provision of input or feedback to any Defendant (whether before or after May 13, 2008),

including without limitation Friedman's participation in any meeting, conference call, communication, discussion, consideration, or planning regarding Website Content (such as, by way of example only and not limitation, a particular type of content, the amount of website space to be devoted to the content, its placement or location on a website, the size or nature of its display on a website, the source of such content and/or the actual or potential terms of its acquisition from a source).

**REQUEST NO. 4:** All documents reflecting, regarding or relating to any discussions or meetings (including conference calls and strings of emails, instant, or other text messages) in which Friedman participated or attended.

**REQUEST NO. 5:** All documents, including but not limited to electronic or paper files or documents, emails, instant messages or other text messages, and all other communications, sent to or received from Friedman since June 1, 2007.

**REQUEST NO. 6:** All documents and communications with or relating to any Clear Channel employee.

**REQUEST NO. 7:** All documents, including but not limited to email communications, plans, strategies, proposals, correspondence, notes or summaries, relating to Clear Channel's business operations that either were created by or received from any current or former Clear Channel employee or are based upon information created by or received from a current or former Clear Channel employee.

**REQUEST NO. 8:** All documents, including but not limited to email communications between any Defendant and any Clear Channel employee, regarding the possible employment of any Clear Channel employee by any Defendants, created or sent since June 1, 2007.

**REQUEST NO. 9:** All computer hard drives, or mirror images thereof, used by you to communicate with Friedman, or to store or access communications with Friedman, on or prior to May 12, 2008, including but not limited to any home computer and company computer hard drive located at your home.

**REQUEST NO. 10:**  All documents regarding Clear Channel's employment agreement with Friedman or with any other current or former Clear Channel employee.

CH1\5766993.1

# EXHIBIT E

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CLEAR CHANNEL BROADCASTING, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 08 cv 2884 |
| | ) | |
| THE TRIBUNE COMPANY, LOCAL TV LLC, | ) | Judge Joan B. Gottschall |
| and ANDREW FRIEDMAN, | ) | Magistrate Judge Susan E. Cox |
| Defendants. | ) | |
| | ) | |

## RESPONSE OF THE TRIBUNE COMPANY AND LOCAL
## TV LLC TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

The Tribune Company ("Tribune") and Local TV LLC ("Local TV" and collectively "Defendants") through their counsel Jenner & Block LLP, hereby respond to Plaintiff Clear Channel Broadcasting, Inc.'s First Set of Interrogatories, as follows:

## GENERAL OBJECTIONS

The following General Objections are incorporated by reference in, and apply to all of Defendants' responses to the Interrogatories:

1.      Defendants object to making available any documents or information protected from discovery by reason of the attorney-client privilege, work product immunity doctrine or other applicable privileges; documents prepared in anticipation of litigation; or documents containing the mental impressions, conclusions, opinions or legal theories of any attorney or other representative of Defendants concerning the litigation of this action.  To the extent that any of the Interrogatories can be construed to include such privileged or exempt information or material, Defendants object thereto and will make available only non-privileged, non-exempt information and materials.

2.     Defendants object to making available any documents or information that are not relevant to the issues pending in the preliminary injunction hearing.  In its May 23, 2008 Order, the Court ruled that Plaintiffs failed to make any showing demonstrating a likelihood of success on its claim for tortious interference with contract, or any other claims against Tribune or Local TV.  The Court ordered expedited discovery only pertaining to the issues to be decided in the preliminary injunction hearing.  Accordingly, Defendants will make available only documents and information that are relevant to the claims that will be at issue in the preliminary injunction hearing.

3.     In responding to the Interrogatories, and in making available any of the documents or information requested, Defendants do not concede the relevance or admissibility thereof, and expressly reserve the right to object to the relevance or admissibility of such information or documents at any point in the future.

4.     All responses hereto are without prejudice to Defendants' right to obtain, produce or use at the preliminary injunction hearing, trial, or other proceeding any document or information not currently in its possession, but subsequently obtained from another source. Defendants have not completed their investigation of this case.  Defendants have made a reasonable, good faith search of their records, but information provided in response to the Interrogatories are done so without prejudice to Defendants' right to supplement these answers with subsequently discovered information.

5.     In the event that Defendants furnish information coming within the scope of the above-referenced objections, Defendants do not waive any of their general or specific objections.

1

6.    Tribune objects to the Interrogatories to the extent they fail to limit the issues listed to a relevant time period.  Tribune will provide responses pertaining to the period from January 1, 2008 to the present.

In addition to the above General Objections, which are expressly incorporated into each and every response below, the following specific objections to each of Plaintiff's specific Interrogatories are set forth as follows:

## ANSWERS

**INTERROGATORY NUMBER 1:**  Identify Friedman's current employer, job title, job responsibilities, day-to-day duties, and the reporting structure up through the President and CEO of the entity employing him.

**ANSWER:**  Without waiving the above General Objections, and pursuant to Fed. R. Civ. P. 33(d), Defendants will produce documents from which the answer to Interrogatory No. 1 can be determined.

**INTERROGATORY NUMBER 2:**    Identify all individuals who have any responsibilities for the online or interactive business, including responsibilities related to Website Content, for Defendants and whether they have any reporting relationship to Friedman.

**ANSWER:**  Defendants object to Request No. 2 as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to those objections, without waiving the above General Objections, and pursuant to Fed. R. Civ. P. 33(d), Defendants will produce documents from which Clear Channel can determine the corporate management-level Tribune employees responsible for Tribune's website news business.

**INTERROGATORY NUMBER 3:**  Describe in detail when and how each of the Defendants Tribune and Local TV first became aware of the existence of Friedman's employment agreement with Clear Channel, specifying who was so notified and when, whether

2

and when a copy of the employment agreement was first provided to any Defendant, and who at the Defendants received it.

**ANSWER:** Defendants object to Interrogatory No. 3 because it is not reasonably calculated to lead to discovery of admissible evidence. Defendants will not provide information in response to Interrogatory No. 3.

**INTERROGATORY NUMBER 4:** Identify all individuals employed by Tribune or Local TV who, prior to May 13, 2008, communicated with Friedman whether verbally, via email, or other means.

**ANSWER:** Defendants object to Interrogatory No. 4 as overly broad, unduly burdensome, and not reasonably calculated to the discovery of admissible evidence. Defendants further object to Interrogatory No. 4 because the information requested is properly discovered through depositions. Subject to those objections, without waiving the above General Objections, and pursuant to Fed. R. Civ. P. 33(d), Defendants will produce documents from which Plaintiff can identify individuals employed by Tribune or Local TV with whom Friedman communicated prior to May 13, 2008.

**INTERROGATORY NUMBER 5:** Identify each and every communication that the Tribune and/or Local TV had with Friedman prior to May 13, 2008.

**ANSWER:** Defendants object to Interrogatory 5 as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object to Interrogatory No. 5 because the information requested is properly discovered through depositions. Subject to those objections, without waiving the above General Objections, and pursuant to Fed. R. Civ. P. 33(d), Defendants will produce documents from which Plaintiff

can identify communications that the Tribune and/or Local TV had with Friedman prior to May 13, 2008.

**INTERROGATORY NUMBER 6:** Has Tribune or Local TV communicated about Friedman's position or duties at Clear Channel or his potential employment with Defendants with any other current or former Clear Channel employee? If so, identify all such current or former Clear Channel employees and provide the date of each such communication.

**ANSWER:** Defendants object to Interrogatory No. 6 as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Defendants will not provide information responsive to Interrogatory No. 6.

**INTERROGATORY NUMBER 7:** Identify all current or former Clear Channel employees with whom either Defendant has communicated about possible employment since June 1, 2007, and provide the date of each such communication.

**ANSWER:** Defendants object to Interrogatory No. 7 as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to those objections, without waiving the above General Objections, and pursuant to Fed. R. Civ. P. 33(d), Defendants incorporate by reference herein the documents referenced in their answer to Interrogatory No. 5.

**INTERROGATORY NUMBER 8:** Identify all each communication between the Tribune and/or Local TV on the one hand, and Friedman on the other hand, about business-related matters, including but not limited to Website Content, or about his anticipated role at Tribune up to and including May 12, 2008.

**ANSWER:** Defendants object to Interrogatory No. 8 as overly broad and unduly burdensome. Subject to those objections, without waiving the above General Objections, and

pursuant to Fed. R. Civ. P. 33(d), Defendants will produce documents from which the answer to Interrogatory No. 8 can be determined.

**INTERROGATORY NUMBER 9:**  Identify all discussion or communications to, from, or between or amongst any agents or employees of Defendants regarding Friedman's employment agreement with Clear Channel.

**ANSWER:**  Defendants object to Interrogatory No. 9 as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Defendants will not provide information responsive to Interrogatory No. 9.

**INTERROGATORY NUMBER 10:**  Identify all agents or employees of Defendants involved in the recruiting, interviewing, and/or hiring of Friedman, including but not limited to all individuals who reviewed his qualifications, interviewed him (by telephone or otherwise), or otherwise evaluated his candidacy for employment, and the individual who made the decision to hire him.

**ANSWER:**  Without waiving the above General Objections, and pursuant to Fed. R. Civ. P. 33(d), Defendants will produce documents from which the answer to Interrogatory No. 10 can be determined.

Dated: June 2, 2008

Respectfully submitted,

THE TRIBUNE COMPANY AND LOCAL
TV LLC

By: /s/ Jason J. Green_____

                   One of their Attorneys

David J. Bradford
Terri L. Mascherin
John F. Ward, Jr.
Jason J. Green
JENNER & BLOCK LLP (#05003)
One IBM Plaza
Chicago, IL 60611
(312) 222-9350

## <u>CERTIFICATE OF SERVICE</u>

I, Jason J. Green, an attorney, hereby certify that on June 2, 2008, I served the foregoing RESPONSE OF THE TRIBUNE COMPANY AND LOCAL TV LLC TO PLAINTIFF'S FIRST SET OF INTERROGATORIES by electronic mail to the following:

Linda K. Stevens
lstevens@schiffhardin.com
Julie Furer Stahr
jstahr@schiffhardin.com
SCHIFF HARDIN LLP
6600 Sears Tower
Chicago, IL 60606
(312) 258-5500

*Attorneys for Plaintiff Clear
Channel Broadcasting, Inc.*

Joette S. Doran
joette@joettedoran.com
Joette S. Doran & Associates, PC
2300 North Barrington Road, Suite 400
Hoffman Estates, Illinois 60169
(847) 490-5309

*Attorney for Andrew Friedman*

/s/ Jason J. Green

7