**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CLEAR CHANNEL BROADCASTING, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 08 cv 2884 |
| | ) | |
| THE TRIBUNE COMPANY, LOCAL TV LLC, | ) | Judge Joan B. Gottschall |
| and ANDREW FRIEDMAN, | ) | Magistrate Judge Susan E. Cox |
| Defendants. | ) | |
| | ) | |

---

**THE TRIBUNE COMPANY AND LOCAL TV LLC'S
<u>MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS</u>**

David J. Bradford
Terri L. Mascherin
John F. Ward, Jr.
Jason J. Green
JENNER & BLOCK LLP
330 N. Wabash, Suite 4000
Chicago, IL 60611
(312) 222-9350

## INTRODUCTION

Defendants The Tribune Company ("Tribune") and Local TV LLC ("Local TV") by their attorneys, Jenner & Block LLP, respectfully submit this Memorandum in Support of their Motion to Dismiss the Complaint. In its Complaint, Clear Channel Broadcasting, Inc. ("Clear Channel") alleges two bases for subject matter jurisdiction with respect to its claims against Tribune and Local TV, diversity jurisdiction under 28 U.S.C. § 1332 and supplemental jurisdiction under 28 U.S.C. § 1367. The Court should dismiss all claims against Tribune and Local TV because each of those alleged bases for jurisdiction is fatally flawed.

*First*, as demonstrated in Section I.A below, there is no diversity jurisdiction because Local TV and Clear Channel are both citizens of Texas. Local TV is a limited liability company whose citizenship is determined by the citizenship(s) of each and every member of the company. (Ex. A, Certification of Formation.)  Local TV is a citizen of Texas because one of its ultimate members is a Texas citizen. (Ex. B, Dec. of Kevin G. Levy.)

*Second*, as demonstrated in Section I.B below, this Court should decline to exercise supplemental jurisdiction as improvident under 28 U.S.C. § 1367(c). Clear Channel uses the artifice of pleading a claim under the Computer Fraud and Abuse Act against only Defendant Andrew Friedman ("Friedman") -- a claim which undisputedly can only be decided in arbitration -- and then attempts to use that claim to bootstrap Tribune and Local TV into federal court under the guise of supplemental jurisdiction. The Court should reject that artifice. Likewise, the Court should decline to exercise supplemental jurisdiction under Section 1367(c)(2) because Clear Channel's state law claims predominate over its sole federal claim against Friedman -- indeed, the sole federal claim pleaded cannot be decided by this Court.

*Third,* even if the exercise of supplemental jurisdiction over Clear Channel's claims against Tribune and Local TV were proper (which it is not), as demonstrated in Section II.A

below, each of those claims should be dismissed for failure to state a claim upon which relief may be granted.

## ALLEGED FACTS

All of Clear Channel's claims are premised upon the allegations that Andrew Friedman ("Friedman") was a "key executive" responsible for building Clear Channel's Online/Interactive business, and that Friedman purportedly misappropriated trade secrets relating to Clear Channel's "confidential plans and strategies that Clear Channel uses to develop, market, implement, and distribute its online offerings" and gave them to Tribune or Local TV (Compl. ¶¶ 1, 4, 13-14, 31-37, 60-63.)  Clear Channel and Friedman entered an Employment Agreement ("Employment Agreement") that provides, among other things, that Friedman "shall not use or disclose Clear Channel's confidential information without authorization," and that contains a 60-day covenant not to compete "[t]o further preserve [the] Company's Confidential Information . . . ."  (*Id.* ¶ 20, Ex. A ¶ 5.)  The Employment Agreement contains a broad arbitration provision stating that "any dispute, controversy, or claim, whether based on contract, tort, statute, discrimination, retaliation, or otherwise, relating to, arising from or connected in manner to this Agreement . . . shall . . .be submitted to and resolved by binding arbitration."  (*Id.*, Ex. A ¶ 16.)

Clear Channel alleges that Tribune and/or Local TV "decided that it could achieve greater success in the Online/Interactive Business by hiring Friedman . . . despite his contractual obligations . . . prohibiting his use or disclosure of Clear Channel's Confidential Information," and that they solicited Friedman to quit his job with Clear Channel to work for Local TV.  (*Id.* ¶¶ 23-25.)  Clear Channel alleges that Tribune's and Local TV's conduct was "willful, malicious, and done in bad faith and with the intent and purpose of . . . misappropriating Clear Channel's

Confidential Information, for the benefit of Defendants and to the great detriment of Clear Channel." (*Id.* ¶ 28.)

Clear Channel claims that Friedman "misappropriated Clear Channel Confidential Information in the days preceding his resignation" from Clear Channel, and that Friedman also "deleted thousands of files from his computer . . . including files relating to his work for Clear Channel and files relating to his work for [Tribune/Local TV]." (*Id.* ¶¶ 31-32.)  Finally, Clear Channel alleges that because Local TV hired Friedman, Tribune and/or Local TV are now "poised to acquire, and have placed [themselves] in a position where [they] will necessarily acquire, Clear Channel Confidential Information." (*Id.* ¶ 37.)

Clear Channel brings four claims against Tribune , Local TV, or both:

- In Count IV (Tortious Interference), Clear Channel asserts that Tribune tortiously interfered with its contract with Friedman and that its conduct was "willful, malicious, and done in bad faith with and the intent and purpose of . . . misappropriating Clear Channel's Confidential Information." (*Id.* ¶¶ 28, 53-55.)

- In Count V (Interference and Inducement of Breach of Fiduciary Duty and Duty of Loyalty), Clear Channel asserts that Tribune interfered with and induced Friedman's breach of fiduciary duty and duty of loyalty "with the intent and purpose of . . . misappropriating Clear Channel's Confidential Information." (*Id.* ¶¶ 28, 56-59.)

- In Count VI (Misappropriation of Trade Secrets),[1] Clear Channel asserts that all of the Defendants misappropriated trade secrets through their actual and inevitable future use of Clear Channel's confidential information. (*Id.* ¶¶ 60-63.)

- In Count VII (Unfair Competition), Clear Channel asserts that all of the Defendants unfairly competed with "the intent and purpose of . . . misappropriating Clear Channel's Confidential Information." (*Id.* ¶¶ 28, 64-65.)

---

[1] Clear Channel's Complaint has two separate counts labeled as "Count V" -- interference with and inducement of breach of fiduciary duty and duty of loyalty, and misappropriation of trade secrets.  In this motion, Defendants refer to Clear Channel's claims for interference with and inducement of breach of fiduciary duty and duty of loyalty as Count V, misappropriation of trade secrets as Count VI, and unfair competition as VII.

## <u>ARGUMENT</u>

**I.      The Complaint Should Be Dismissed Under Fed. R. Civ. P. 12(b)(1) Because The Court Lacks Subject Matter Jurisdiction.**

It is axiomatic that a plaintiff can litigate in federal court only if there is a basis for federal jurisdiction. *See* U.S. Const. Art. III, § 2; Fed. R. Civ. P. 12(b)(1). The plaintiff bears the burden of establishing that the jurisdictional requirements have been met. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003). In determining whether subject matter jurisdiction exists, the court is not required to accept plaintiffs' allegations as true. *Allstate Ins. Co. v. City of Chicago*, No. 02 C 5456, 2003 WL 1877670, at *1 (N.D. Ill. Apr. 14, 2003). "[T]he court is not restricted to the face of the pleadings, but may review any evidence such as affidavits and testimony to resolve factual disputes concerning the existence of jurisdiction to hear the action." *Radulescu v. Moldowan*, 845 F. Supp. 1260, 1262 (N.D. Ill. 1994).

Clear Channel pleads two purported bases for subject matter jurisdiction over its claims against Tribune and Local TV: (1) diversity jurisdiction under 28 U.S.C. § 1332(a), (Compl. ¶ 7); and (2) federal question jurisdiction over Count I (against Friedman) pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1030, with supplemental jurisdiction over all other counts pursuant to 28 U.S.C. § 1367, (Compl. ¶ 8). Each of those alleged bases for jurisdiction is fatally flawed.

*First*, there is no diversity jurisdiction because there is not "complete" diversity between Plaintiff and Defendants. Clear Channel, the Plaintiff, and Local TV, one of the Defendants, are both citizens of Texas. *Second*, in the absence of diversity jurisdiction, this Court should decline supplemental jurisdiction as improvident under 28 U.S.C. § 1367(c). This Court should do so because: (a) exercising supplemental jurisdiction would allow Clear Channel to circumvent Article III's requirement of complete diversity and the policies underlying the Federal

Arbitration Act which require the Court to refrain from deciding Clear Channel's sole federal claim because it is arbitrable; and (b) Clear Channel's state law claims predominate over its sole federal claim against Friedman, a claim that must be resolved in arbitration.

**A.  Under 28 U.S.C. § 1332, this Court Lacks Diversity Jurisdiction Because Clear Channel and Local TV are Both Citizens of Texas.**

28 U.S.C. § 1332 requires "complete" diversity of citizenship between the Plaintiff and each of the Defendants. *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 187 (1990). Clear Channel alleges that Clear Channel is a Nevada resident with its principal place of business in Texas (Compl. ¶ 3), that Defendant Andrew Friedman is a citizen of Illinois (*id.* ¶ 4), that Tribune is a Delaware corporation with its principal place of business in Illinois (*id.* ¶ 5), and that Local TV is a Delaware corporation with its headquarters in Kentucky (*id.* ¶ 6). Clear Channel is incorrect. Local TV is a limited liability company, not a corporation, and it, like Clear Channel, is a citizen of Texas. (Ex. A, Certificate of Formation; Ex. B, Dec. of Kevin G. Levy.)

A limited liability company shares the same citizenship as each and every member of the company. *See Belleville Catering Co. v. Champaign Market Place, L.L.C.*, 350 F.3d 691, 692 (7th Cir. 2003) ("limited liability companies are citizens of every state of which any member is a citizen"); *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998) ("the citizenship of an LLC for purposes of the diversity jurisdiction is the citizenship of its members"). Moreover, if any member of a limited liability company is itself an unincorporated entity, citizenship of the larger entity is traced through to the citizenship(s) of its component members, through as many layers as necessary to determine their ultimate underlying citizenship of each member. *See Hart v. Terminex Int'l*, 336 F.3d 541, 543 (7th Cir. 2003).

Local TV is an unincorporated entity with several members. (Ex. A, Certificate of Formation; Ex. B, Dec. of Kevin G. Levy.) Two of those members are limited partnerships known as Oak Hill Capital Partners II, LP and Oak Hill Capital Management Partners II, LP. (Ex. B, ¶ 3(c).) As unincorporated limited partnerships, Oak Hill Capital Partners II, L.P and Oak Hill Capital Management Partners II, LP each shares the citizenship of its own general and limited partners. *Carden*, 494 U.S. at 187; *Hart*, 336 F.3d at 543. The general partner of both Oak Hill Capital Partners II, LP and Oak Hill Capital Management Partners II, LP is OHCP GenPar II, LP, itself a limited partnership. (Ex. B, ¶ 3(b).) The general partner of OHCP GenPar II, LP is OHCP MGP II, LLC, a limited liability company. (*Id.* ¶ 3(a).) One of the members of OHCP MGP II, LLC is Kevin G. Levy, a citizen of Texas. (*Id.* ¶ 3.)

Thus, Local TV is a citizen of Texas because one of its ultimate members is a Texas citizen. *See Hart*, 336 F.3d at 543; *Belleville Catering Co.*, 350 F.3d at 692; *Cosgrove*, 150 F.3d at 731. Accordingly, because Local TV and Clear Channel are each citizens of the same state, Texas, this Court does not have diversity jurisdiction under 28 U.S.C. § 1332. Moreover, it cannot seriously be disputed that Local TV, the entity that now employs Friedman, is an indispensable party to this action. Fed. R. Civ. P. 21. Accordingly, the lack of complete diversity at the time Clear Channel filed its Complaint is fatal and requires dismissal of the Complaint. *Wire v. Hussman*, No. 03 C 5389, 2004 WL 723845, *4 (N.D. Ill. Mar. 31, 2004) (*citing Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 73 (1996) (lack of complete diversity at time complaint is filed requires dismissal if non-diverse party is indispensable).

**B.    This Court Should Decline to Exercise Supplemental Jurisdiction over Clear Channel's State Law Claims Against Tribune and Local TV.**

Without diversity jurisdiction, the only remaining possible basis for subject matter jurisdiction over the claims against Tribune and Local TV is supplemental jurisdiction flowing

from the one federal claim that Clear Channel pleads against Friedman.   Under the circumstances, it would be improvident for the Court to exercise supplemental jurisdiction over the state law claims against Tribune and Local TV.  Instead of litigating its claims in a proper forum in which it could obtain jurisdiction over Tribune and Local TV, Clear Channel instead uses the artifice of pleading a claim under the Computer Fraud and Abuse Act against only Friedman -- a claim which Clear Channel concedes can only be decided in arbitration -- and attempts to use that claim to bootstrap state law claims against Tribune and Local TV into federal court under the guise of supplemental jurisdiction.  The Court should not countenance that ruse and should dismiss the claims against Tribune and Local TV for lack of subject matter jurisdiction.

28 U.S.C. § 1367(a) permits a Court to exercise supplemental jurisdiction over state law claims that are "so related" to claims over which the district court has federal question jurisdiction that they "form part of the same case or controversy under Article III of the United States Constitution."   28 U.S.C. § 1367(c) provides that a court may decline to exercise supplemental jurisdiction over a state law claim where, *inter alia*: the state law claim "substantially predominates over the claim or claims over which the district court has original jurisdiction," "the district court has dismissed all claims over which it has original jurisdiction," or "there are other compelling reasons for declining jurisdiction."  *Id.*  Here, all three grounds apply, because the sole federal claim that could open the door to supplemental jurisdiction cannot even be decided by this Court.

*First*, compelling reasons exist in this case to decline supplemental jurisdiction under Section 1367(4) because allowing Clear Channel to litigate against Tribune and Local TV in this Court would offend both Article III's limitations on the jurisdiction of federal courts and the

policies underlying the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*  Defendant

Friedman's Employment Agreement with Clear Channel includes a very broad arbitration clause.

(Compl. Ex. A ¶ 16.)  The clause provides that the parties may resort to filing action in a court of

competent jurisdiction *only* "to compel arbitration under this Agreement, to enforce an

arbitration award, and to vacate an arbitration award."  (Compl., Ex. A. ¶ 16.)

The United States Supreme Court has stated:  "[c]ontracts to arbitrate are not to be

avoided by allowing one party to ignore the contract and resort to the courts.  Such a course

could lead to prolonged litigation, one of the very risks the parties, by contracting for arbitration,

sought to eliminate."  *Southland Corp. v. Keating*, 465 U.S. 1, 7 (1984).  To that end, the

Seventh Circuit has recognized that a court can act on arbitrable claims only insofar as to

maintain the status quo until an arbitration panel can be assembled to rule on the merits of the

claims and the ultimate scope and necessity of injunctive relief.  *Merrill Lynch, Pierce, Fenner &*

*Smith, Inc. v. Salvano*, 999 F.2d 211, 214-15 (7th Cir. 1993).

Under both the FAA and Friedman's Employment Agreement, if Clear Channel had

simply wished to maintain the status quo with Friedman pending arbitration, the proper course

would have been for Clear Channel to seek an injunction in aid of arbitration under the FAA.  86

Am. Jur. 2d Trials 111, § 96 (2008).  Instead, Clear Channel filed substantive claims against

Friedman in this Court, at the same time conceding that the merits of those claims must be

resolved in arbitration.  Clear Channel did that so it could bootstrap its claims against Tribune

and Local TV to its arbitrable claims against Friedman, a transparent effort to obtain

supplemental federal jurisdiction over Tribune and Local TV.  Permitting that artifice to form the

basis for supplemental jurisdiction over Tribune and Local TV would circumvent both the

requirements for diversity jurisdiction and the policies underlying the FAA.

*Second*, the Court should decline supplemental jurisdiction under Section 1367(c)(2) because Clear Channel's state law claims predominate over its sole federal claim against Friedman.  Indeed, the Court cannot even decide the one federal claim, because it must be arbitrated.  Thus, Clear Channel's state law claims against Tribune and Local TV not only will predominate but will actually be the *only* claims that the Court can decide in this case.

Courts in this district have routinely refused to grant supplemental jurisdiction under Section 1367(c)(2) where, as here, the plaintiff has pleaded federal claims only as "appendages designed to secure the jurisdiction of [the] court" over predominant state law claims.  *See, e.g.*, *Elb-Mattison, Inc. v. M/V Kosciuszko*, No. 91 C 5449, 1992 WL 132538, at *3 (N.D. Ill. June 8, 1992); *McDonald's Corp. v. Simon Mktg., Inc.*, No 01 C 8121, 2002 WL 31056697, at *3 (N.D. Ill. Sept. 16, 2002); *see also Eurenergy Resources Corp. v. CBM Energy Ltd.*, No. 3-05-CV-2495-M, 2006 WL 1140643, at *3 (N.D. Tex. May 1, 2006) (declining to exercise supplemental jurisdiction over state law claims against defendants who were not parties to arbitration agreement where lone basis for federal question jurisdiction was stayed arbitrable claims).  In *Elb-Mattison*, the court declined to exercise supplemental jurisdiction because it determined that the plaintiff's attempt to bootstrap its claim of maritime jurisdiction over one party into supplemental jurisdiction over its state law claims against another party was "an effort to impose upon [the court] what is in effect only a state law case."  1992 WL 132538, at *3 (*quoting United Mine Workers v. Gibbs*, 383 U.S. 715, 727 (1967)).  Similarly, in *McDonald's Corp*, the court dismissed supplemental state law claims against a defendant where it determined that the plaintiff's purported federal question claims against other defendants amounted to "a bobbed tail attempting to wag a very large dog."  2002 WL 31056697, at *3.

Clear Channel's grasp for supplemental jurisdiction is even more attenuated than in those cases. Clear Channel sued Friedman under the Computer Fraud and Abuse Act, conceding that it seeks only interim relief and that the claim must be arbitrated. (Compl. ¶ 2.) It added to that complaint a claim against Friedman for misappropriation of trade secrets -- which also must be arbitrated -- and "joined" Tribune and Local TV as defendants on that claim, and then strung onto the complaint other state law claims only against Tribune or Local TV. The claims against Friedman on the one hand and Tribune/Local TV on the other hand not only should not but cannot be joined in the same proceeding because of Clear Channel's arbitration agreement with Friedman. As in *Elb-Mattison*, Clear Channel's primary claims for relief *from this court* lie not in its sole federal claim against Friedman but in its state law claims against Tribune and Local TV. *See* 1992 WL 132538, at *3. As in *McDonald's*, Clear Channel will never proceed on the merits of its federal claims against Friedman before this Court. *See* 2002 WL 31056697, at *3. Because the inevitable resolution in arbitration of Clear Channel's sole federal claim against Friedman will leave this Court to resolve only Clear Channel's state law claims against Tribune and Local TV, the Court should follow the approach other courts in this district have taken in similar circumstances and decline to exercise supplemental jurisdiction. *See id.*; *Elb-Mattison*, 1992 WL 132538, at *3.

Thus, because complete diversity is lacking in this case and because exercise of supplemental jurisdiction over Clear Channel's state law claims would be improvident under the circumstances, this Court should dismiss all claims against Tribune and Local TV for lack of subject matter jurisdiction.[2]

---

[2] At a minimum, the Court should stay the state law claims until the arbitration is resolved. *See Midwest Fin. Holdings, LLC v. P & C Ins. Sys., Inc.*, No. 07-3156, 2007 WL 43202436, at *6 (C.D. Ill. Dec. 7, 2007) (staying supplemental claims until resolution of arbitration of claims over which court had original jurisdiction). After the arbitrator has resolved all disputes between Clear Channel and Friedman,

II.  **Counts IV, V, VI, and VII Should Be Dismissed Should Be Dismissed For Failure to State Claims Upon Which Relief May Be Granted.**

Even if this Court could appropriately exercise subject matter jurisdiction over Clear Channel's state law claims against Tribune and Local TV, those claims should be dismissed for failure to state claims upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).

A.  **Count VI (Misappropriation of Trade Secrets) Should Be Dismissed Because Clear Channel's Strategies Lost "Secrecy" Once Published on the Internet.**

The Court should dismiss Count VI because Clear Channel cannot as a matter of law demonstrate a protectable trade secret in its strategies for national and local interactive content. Assuming for purposes of this motion that Clear Channel's strategies constituted trade secrets at some point in time, those strategies could not as a matter of law have constituted protectable trade secrets once Clear Channel published interactive content over the internet.  *See EarthWeb, Inc. v. Schlack*, 71 F. Supp. 2d 299, 315 (S.D.N.Y. 1999).  Under the Illinois Uniform Trade Secrets Act ("ITSA"), a trade secret "must be sufficiently secret to impart economic value to both its owner and its competitors because of its relative secrecy."  *George S. May Int'l Co. v. Int'l Profit Assocs.*, 256 Ill. App. 3d 779, 788 (1st Dist. 1994).

In *EarthWeb, Inc.*, a case involving very similar facts, the plaintiff, an Internet information technology website, sought a preliminary injunction to enjoin its former vice president from accepting a similar position with an alleged competitor. 71 F. Supp. 2d at 315. The plaintiff argued that the defendant was "intimately familiar with the 'strategic thinking'" behind its websites, the "specific target audiences to which each website is directed, why certain content is grouped or aggregated in the manner it is in order to attract and retain the intended

including Clear Channel's lone federal claim, this Court will likely dismiss the lone federal claim against Defendant Friedman.  At that point, courts routinely dismiss any remaining state law claims over which it has only supplemental jurisdiction.  *See* § 1367(c)(2); *Contreras v. Suncast Corp.*, 237 F.3d 756, 766 (7th Cir. 2001) (recognizing that the relinquishment of supplemental jurisdiction after a court has disposed of all federal claims is the norm); *Allen v. City of Rockford*, No. 99 C 50324, 2002 WL 426117, at *7 (N.D. Ill. Mar. 15, 2002) (same).

audience, and the gaps or holes in the content at each website, and [plaintiff's] plans for improving the sites." *Id.* at 314. The court denied the preliminary injunction motion, refusing to afford trade secret protection to the extent "strategic thinking [was] necessarily revealed when those websites [were] launched on the Internet." *Id.* at 315.

Several other courts, as well, have held that a plaintiff cannot claim trade secret protection for information that is readily available on the internet. *See e.g.*, *DVD Copy Control Assoc. Inc. v. Bunner*, 116 Cal. App. 4th 241, 251-53 (Ct. App. 2004); *Heritage Benefit Consultants, Inc. v. Cole,* No. CV00162270S, 2001 WL 237240, at *8 (Conn. Super. Ct. Feb. 23, 2001); *Religious Tech. Ctr. v. Lerma*, 897 F. Supp. 260, 266 (E.D. Va. 1995). In *Bunner*, for example, the California Court of Appeals reversed the issuance of a preliminary injunction where the plaintiff's alleged trade secrets in DVD decryption software had become widely available on the internet by the time the defendant published the software. 116 Cal. App. 4th at 251-53. The court held that because the software had become widely available, the plaintiff could not demonstrate a likelihood of success that the software was secret. *Id.* at 253. In *Heritage Benefit*, the court denied a preliminary injunction where the plaintiff's alleged trade secrets in its client names, plan data, and contact names were readily ascertainable over the internet. 2001 WL 237240, at *8. The court held that "[t]he wealth of information that the Internet now provides to businesses precludes a finding that the information sought to be protected in this case should be considered a trade secret." *Id.* And in *Lerma*, the court held that Church of Scientology texts were no longer trade secrets after they had been published on the internet, despite the Church's "extraordinary measures to try to maintain the secrecy." 897 F. Supp. at 266. Because the Church's texts had escaped onto the internet, the court held that "the plaintiff cannot establish that the AT documents are 'not generally known.'" *Id.*

Here, as in *Earthweb*, *Bunner*, *Heritage Benefit*, and *Lerma*, whatever trade secrets Clear Channel may have had during Friedman's employment are no longer sufficiently secret to constitute trade secrets because the "strategic thinking" behind its internet content has been made widely available on the internet. *See* 71 F. Supp. 2d at 315*;* 116 Cal. App. 4th at 251-53; 2001 WL 237240, at *8; 897 F. Supp. at 266. Anyone -- including Clear Channel's competitors -- can view the type and balance of content, the type of advertising, and deduce the target audience involved in Clear Channel's "strategic thinking" simply by visiting Clear Channel's websites. As a result, Clear Channel cannot demonstrate that the information its seeks to protect is sufficiently secret to merit protection as a trade secret under ITSA, *see George S. May Int'l Co. v. Int'l Profit Assocs.*, 256 Ill. App. 3d at 788, and Count V should be dismissed for failure to state a claim.

**B.     Counts IV (Tortious Interference), V (Inducement of Fiduciary Breaches), and VII (Unfair Competition) Should Be Dismissed Because They Are Preempted By The ITSA.**

Clear Channel's claims for tortious interference with contract, inducement of fiduciary breaches, and common law unfair competition should be dismissed because they are preempted by the ITSA. The ITSA is "intended to displace conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret." 765 ILCS 1065/8. The ITSA preempts any non-contractual common law theories of recovery arising from facts that allege the misappropriation of confidential business information. *Composite Marine Propeller, Inc. v. Van Der Woude,* 962 F.2d 1263, 1265 (7th Cir. 1992); *Labor Ready, Inc. v. Williams Staffing, LLC*, 149 F. Supp. 2d 398, 409-413 (N.D. Ill. 2001); *Thomas & Betts Corp. v. Panduit Corp.*, 108 F. Supp. 2d 968, 971 (N.D. Ill 2000). On a motion to dismiss, common law tort or unfair competition claims that rely even in part on

misappropriation of trade secrets should be dismissed as pre-empted. *Labor Ready*, 149 F. Supp. 2d at 409-413.

Clear Channel's claims for tortious interference with contract, inducement of fiduciary breaches, and common law unfair competition all are grounded on allegations that Defendants misappropriated Clear Channel's trade secrets. Specifically, Clear Channel alleges:

- that Tribune and/or Local TV by hiring Friedman "decided that it could achieve greater success in the Online/Interactive Business despite his contractual obligations . . . prohibiting his use or disclosure of Clear Channel's Confidential Information," (Compl. ¶ 23);

- that Tribune and/or Local TV "set Friedman up with a 'localtvllc.com' email address in order to better provide" assistance regarding content strategy, vendor recommendations, and certain vendors' pricing to Clear Channel and that "Friedman cautioned his Tribune colleagues to keep their conversations 'confidential'" because "that will allow us to delve into lots of areas that are delicate, but useful and critical," *(Id.* ¶ 25); and

- that Tribune and/or Local TV's conduct "was willful, malicious, and done in bad faith and with the intent and purpose of causing a breach of Friedman's contractual and fiduciary obligations, exploiting Friedman's position of trust and confidence, and *misappropriating Clear Channel's Confidential Information*." (*Id.* ¶ 28 (emphasis added).)

Those allegations are incorporated into Clear Channel's claims for tortious interference with contract, inducement of fiduciary breaches, and common law unfair competition. (Compl. ¶¶ 53, 56, 64.) All of those claims are grounded in Clear Channel's allegation that Defendants misappropriated trade secrets. Accordingly, those claims are preempted by the ITSA and should be dismissed.

**CONCLUSION**

For the reasons set forth above, this Court should dismiss each of Clear Channels claims

against Tribune and Local TV.

Dated: June 9, 2008                                     Respectfully submitted,

                                                        THE TRIBUNE COMPANY AND LOCAL
                                                        TV LLC

                                                        By: /s/ John F. Ward, Jr._____
                                                            One of their Attorneys

                                                            David J. Bradford
                                                            Terri L. Mascherin
                                                            John F. Ward, Jr.
                                                            Jason J. Green
                                                            JENNER & BLOCK LLP (#05003)
                                                            One IBM Plaza
                                                            Chicago, IL 60611
                                                            (312) 222-9350

**<u>EXHIBIT A</u>**

*State of Delaware*
*Secretary of State*
*Division of Corporations*
*Delivered 04:49 PM 12/11/2006*
*FILED 04:36 PM 12/11/2006*
*SRV 061130398 - 4265438 FILE*

CERTIFICATE OF FORMATION

OF

LOCAL TV, LLC

This Certificate of Formation of Local TV, LLC (the "Company") dated as of December 11, 2006, is duly executed and filed to form a limited liability company under the Delaware Limited Liability Company Act.

FIRST:     The name of the limited liability company formed hereby is Local TV, LLC.

SECOND:     The address of the registered office of the Company in the State of Delaware is c/o Corporation Service Company, 2711 Centerville Road, Suite 400, in the City of Wilmington, County of New Castle, Delaware 19808.

THIRD:     The name and address of the registered agent for service of process on the Company in the State of Delaware is Corporation Service Company, 2711 Centerville Road, Suite 400, in the City of Wilmington, County of New Castle, Delaware 19808.

FOURTH:     The name and address of the authorized person is Matthew A. Block, Dow Lohnes PLLC, Six Concourse Parkway, Suite 1800, Atlanta, Georgia, 30328. The powers of the authorized person shall terminate upon the filing of this Certificate of Formation.

IN WITNESS WHEREOF, the undersigned has executed this Certificate of Formation as of the date first above written.

Matthew A. Block
Authorized Person

# *Delaware*

PAGE  1

### *The First State*

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY "LOCAL TV, LLC" IS DULY FORMED UNDER
THE LAWS OF THE STATE OF DELAWARE AND IS IN GOOD STANDING AND
HAS A LEGAL EXISTENCE SO FAR AS THE RECORDS OF THIS OFFICE SHOW,
AS OF THE FIFTH DAY OF JUNE, A.D. 2008.

AND I DO HEREBY FURTHER CERTIFY THAT THE ANNUAL TAXES HAVE
BEEN PAID TO DATE.

Harriet Smith Windsor
Harriet Smith Windsor, Secretary of State

4265438  8300

080668064

AUTHENTICATION:  6640205

DATE:  06-05-08

You may verify this certificate online
at corp.delaware.gov/authver.shtml

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CLEAR CHANNEL BROADCASTING, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 08 cv 2884 |
| | ) | |
| THE TRIBUNE COMPANY, LOCAL TV LLC, | ) | Judge Joan B. Gottschall |
| and ANDREW FRIEDMAN, | ) | Magistrate Judge Susan E. Cox |
| Defendants. | ) | |
| | ) | |

## DECLARATION OF KEVIN G. LEVY

I, Kevin G. Levy, declare as follows:

1.      I make this Declaration from my personal knowledge.  If called to testify I would be competent to testify to the facts stated in this Declaration.

2.      I am a resident of the State of Texas.

3.      I am a member of a limited liability company known as OHCP MGP II, LLC which is, indirectly, a member of Local TV LLC, as a result of the following chain of ownership:

      a.  OHCP MGP II, LLC. is the General Partner of OHCP Gen Par II, LP, a limited partnership;

      b.  OHCP Gen Par II, LP is the General Partner of both Oak Hill Capital Partners II, LP, a limited partnership, and Oak Hill Capital Management Partners II, LP, a limited partnership;

      c.  Oak Hill Capital Partners II, LP and Oak Hill Capital Management Partners II, LP are members of Local TV, LLC.

1

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this _____3rd_____ day of June, 2008

_____
Kevin G. Levy